# SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

## April 20, 1917.

## WILLIAM E. GODFREY v. MEDICAL SOCIETY OF THE COUNTY OF NEW YORK.

### (177 App. Div.. 684.)

PUBLIC HEALTH*—PRACTICE OF MEDICINE BY MEMBERSHIP CORPORATION AND UNLICENSED OFFICER THEREOF—ADMINISTRATION OF CURE FOR DRUNKENNESS—MALICIOUS PROSECUTION—PROSECUTION BY MEDICAL SOCIETY FOR ILLEGAL PRACTICE OF MEDICINE—PROBABLE CAUSE— ACQUITTAL OF PLAINTIFF—BURDEN OF PROOF—EVIDENCE—FAILURE TO ANALYZE INGREDIENTS OF PROPRIETARY MEDICINE—COMPETENCY OF LAWYER ADVISING CRIMINAL PROSECUTION—WARNING TO AFFIANT OF LIABILITY FOR PERJURY IF AFFIDAVIT BE UNTRUE.

A business corporation may not in its own name practice medicine, that is to say, administer medicine in treating diseases or physical conditions, even though it does so upon the advice or prescription of a licensed physician in each individual case.

It seems, that only membership corporations such as hospitals, infirmaries, dispensaries, etc., approved by the State Board of Charities and a justice of the Supreme Court, may practice medicine.

It is equally a violation of the Public Health Law for the manager or officer of a membership corporation, who is not a licensed physician, to practice medicine in the name of the corporation, as by advertising an alleged cure for inebriety and administering remedies therefor to patients who come to such incorporated institution.

For an officer of such corporation, not being a licensed physician, to advertise, prescribe and administer a so-called "patent" remedy for inebriety, of the ingredients and nature of which he is ignorant, is practicing medicine in violation of the statute.

On proof of the facts aforesaid the officer of such corporation should have been convicted of illegally practicing medicine and, although he was actually acquitted by the jury in a prosecution, instituted by the

---

* See Note, Vol. 21, p. 236.

department of a medical society having charge of the investigation and suppression of the practice of medicine by quacks and others, said society, having been informed of these facts and having warned the offender that his practice was illegal, had probable cause for the criminal prosecution as a matter of law, and hence a verdict rendered against said medical society in an action for malicious prosecution will be reversed and the complaint therein dismissed.

Where the defendant in the action for malicious prosecution moved for a new trial upon the ground that the verdict against it was contrary to the law and to the evidence, the question of probable cause may be reviewed by the Appellate Division.

The burden of proving the want of probable cause rests upon the plaintiff in an action for malicious prosecution, and the fact of the plaintiff's acquittal on a criminal charge is not evidence of want of probable cause.

Evidence examined, and *held*, that a statement made to the officers of the defendant medical society by a person who had been treated for inebriety by the plaintiff and information communicated by an investigator employed by it constituted, as a matter of law, probable cause for the criminal prosecution of the plaintiff.

In the action for malicious prosecution it was error to exclude questions put on cross-examination to a physician employed by the corporation for the purpose of showing that he had never made an analysis to ascertain the ingredients of the medicine administered to inebriates.

So, too, it was error to exclude evidence as to the legal knowledge and experience of the defendant's lawyers whose advice it had relied upon in instituting the criminal prosecution.

Moreover, it was error to exclude evidence to the effect that the defendant's attorneys, before taking the affidavit of a patient treated in the plaintiff's institution, had admonished him as to his liability for perjury if he made any untrue statement therein.

Rich, J., dissented, with opinion.

Appeal by the defendant, Medical Society of the County of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 26th day of June, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying its motion for a new trial made upon minutes.

*George W. Whiteside* (*William S. Shaterian* with him on the brief), for the appellant.

*Edwin T. Taliaferro* (*A. Berton Reed* with him on the brief), for the respondent.

MILLS, J.:

This is an appeal by the defendant from a judgment entered in Kings county, June 26, 1916, upon a verdict rendered at the Kings Trial Term against the defendant for $2,500 damages, and also from an order made at said term denying defendant's motion upon the minutes for a new trial. The action was brought to recover damages for malicious prosecution, upon allegations that without probable cause and maliciously the defendant, on or about March 6, 1914, instituted a criminal prosecution against the plaintiff in the borough of Manhattan, charging him with having committed a misdemeanor by unlawfully practicing medicine without a license within the borough of Manhattan, and that such prosecution resulted in the plaintiff's acquittal by the Court of Special Sessions in said borough, after due trial, on December 24, 1914. The answer was, in effect, a general denial.

The evidence established the following principal facts: The defendant is and for many years has been (having been organized under an act passed April 4, 1806)* a domestic corporation, and has, within the exercise of its corporate powers, maintained a department for the investigation and suppression of the illegal practice of medicine by quacks and others in New York county. The plaintiff is not and never has been a physician, licensed or otherwise. In August, 1912, he organized in this State a corporation under the Business Corporations Law (Consol. Laws, chap. 4 [Laws of 1909, chap. 12], as amd.).

---

* See Laws of 1806, chap. 138, as amd.— [REP.

with the title of " Gatlin Institute of New York, Inc.," for the express purpose " To maintain and operate institutes for the cure of the liquor and drug habit." He became and acted throughout as its manager, and as such opened an office or house for its practice in said borough. He had individually purchased from the so-called parent corporation in Chicago the right to use the so-called " Gatlin Treatment " for the cure of the drink habit, which consisted for the most part in the taking of a certain liquid medicine and pills, the ingredients of which were unknown to plaintiff or to any one connected with such New York corporation, the articles being obtained from the said parent corporation or plant. He assigned such right to the New York corporation. He composed and published in various newspapers and circulars sensational advertisements, in which the corporation denominated " The Gatlin Institute " promised and guaranteed, for a certain money consideration, to cure any one of the drink habit by three days' treatment at its said place. Before beginning such practice or having the institute begin it, plaintiff called upon defendant's chief counsel and informed him of his intention and asked him, in effect, if such practice would violate the law, and in response was told by such counsel that it would, and that, if he undertook it, the defendant would prosecute him therefor. Nevertheless the plaintiff, as such manager, opened the institute and began its such practice. After some few months one Darragh called upon defendant's assistant counsel, who had in charge the investigation of such matters, and told him, in effect, that he had been treated at said institute and that for at least the first day plaintiff had personally administered the treatment to him without any physician seeing him at all. Such counsel thereupon sent one of defendant's investigators, a woman, to the institute, and she returned and reported that she had been there and interviewed the plaintiff, and that the plaintiff had offered to her to have the institute treat her father there, and even, if

her father could not come there, to have him so treated at his home, that is, without personal contact with him. Such counsel, therefore, after consulting with his chief, took affidavits from both Darragh and the investigator to such effect, and upon the strength of those affidavits instituted the said prosecution against the plaintiff and as well against the corporation, namely, the " Gatlin Institute of New York, Inc.," upon the charge that each had violated the statute by practicing medicine unlawfully within said county for about one year prior to January 29, 1914, and especially by treating the said Darragh, and had thereby been guilty of a misdemeanor. Such prosecution was conducted and resulted in plaintiff's acquittal as alleged in the complaint.

The plaintiff's defense to such prosecution and charge was, in substance, that he had not personally treated Darragh at all without a duly licensed physician, and that the institute and he, as its manager, never treated any one with the said Gatlin treatment or otherwise until a duly licensed physician employed by the institute had first seen the person and prescribed such treatment for him. Apparently the said Court of Special Sessions took the view that such defense was established and was sufficient. At the trial of this action the learned presiding justice apparently took the same view as to the law.

I think that the trial was conducted by the learned trial justice upon an entirely mistaken theory of the law; and that, upon the correct theory thereof, probable cause for the criminal prosecution was clearly established. I regard the case as one of very great importance, as being likely, if it shall stand as a precedent as it now is, to lead to the opening of many quack sanitariums and " Cure All " institutes under the guise of business corporations or registered trade names of individuals who are not licensed physicians.

I base my conclusions upon the following considerations:

*First.* The learned trial justice conducted the trial and sub-

mitted the case to the jury upon the theory of law that if the plaintiff herein, as manager of the corporation known as the " Gatlin Institute of New York, Inc.," had it treat its patrons, although in its own name, by giving medicine only " upon the advice and counsel, or prescription, in the particular case, of a duly licensed physician, it was not practicing medicine, and neither the corporation nor the plaintiff would be guilty of violating the law," which prohibits such practice by any person other than a licensed physician.    In his main charge he instructed the jury in the very words just quoted, and also to the same effect, in denying certain apt requests to the contrary made by the defendant, and the defendant duly excepted to such rulings.

The trial justice properly charged that the said corporation could not practice medicine — that is, that in that respect it stood the same as an individual.    That was in strict accord with the decision of the Court of Appeals in People v. Woodbury Dermatological Inst. (192 N. Y. 454).    He also properly charged the jury that if the plaintiff, as the manager of the corporation, aided and abetted it in so practicing medicine, he was equally guilty with the corporation itself, which, of course, is in strict accord with the provisions of section 2 of the Penal Law.

This doctrine that a business corporation may, in its own name, practice medicine, viz., administer medicine in treating disease or physical condition (see Public Health Law [Consol. Laws, chap. 45; Laws of 1909, chap. 49], § 160), provided only it does so upon the advice or prescription of a licensed physician in each individual case, appears to be in the very teeth of the unanimous decision of the Appellate Division in the First Department in People ex rel. Lederman v. Warden of City Prison (168 App. Div. 240, 33 N. Y. Crim. 138).    That court in that case affirmed an order made at Special Term dismissing a writ of habeas corpus obtained to secure the discharge of the relator from custody upon conviction for such an offense.    The affirm-

ance was made upon the opinion of the justice at Special Term. The gist of that opinion is well stated in the headnote as follows: "A person who advertises under his trade name as 'The Standard Pharmacy Company' to give a free medical examination, and employs a duly licensed physician for such purpose, and issues cards entitled, 'Card for free examination. Medical and surgical office of The Standard Pharmacy Company,' giving the address and directing the doctor to make examination and give medical advice to the bearer who is now using remedies of the company, and to make no charge to the holder of the card, but to charge the same to the company, and giving the office hours, may be deemed to hold himself out under his trade name as being able to diagnose and treat diseases, and hence, may be convicted of practicing medicine unlawfully, in violation of section 174 of the Public Health Law." (168 App. Div. 240.)

It will be noted that in that case the medical advice or prescription was always given by the licensed physician employed by the relator, who himself was unlicensed, and which physician was paid, not by the patient, but by the defendant. The decision in that case was expressly based, at least to some substantial extent, upon the opinion in the Woodbury Case (*supra*). The learned counsel for the respondent correctly states that the Court of Appeals in the latter case merely decided that a business corporation was a person within the meaning of the statute forbidding the practice of medicine by any person except a licensed physician, or the advertising of such practice. The learned Judge WILLARD BARTLETT, who wrote for the court, went, in his opinion, much further. He contrasted the situation of such a business corporation with that of a hospital organized under the Membership Corporations Law (Gen. Laws, chap. 43 [Laws of 1895, chap. 559], § 80, as amd. by Laws of 1900, chap. 404; now Consol. Laws, chap. 35 [Laws of 1909, chap. 40], § 130) with "the written approval of the

State Board of Charities and a justice of the Supreme Court of the district" (p. 458).

In the later case of Matter of Co-operative Law Co. (198 N. Y. 479, 484), that court cited the Woodbury Case (*supra*) as authority for the following determination excerpted from the opinion therein, viz.: "A corporation can neither practice law nor hire lawyers to carry on the business of practicing law for it any more than it can practice medicine or dentistry by hiring doctors or dentists to act for it.  *  *  *  The Legislature in authorizing the formation of corporations to carry on ' any lawful business ' did not intend to include the work of the learned professions."  (See, also, People ex rel. Floersheimer v. Purdy, 174 App. Div. 694, 699.)

The law of the case, as laid down here by the trial justice, would give to a business corporation precisely the same power and right in that regard as that opinion declared, in effect, is possessed only by a corporation established under the Membership Corporations Law, viz., " a hospital, infirmary, dispensary," etc.  Such a corporation as that, the opinion declared, was not subject to the operation of the said statutes prohibiting such practice.  (192 N. Y. 458.)

The only distinction between the case here at bar and the Lederman Case (*supra*), which I can perceive, is that in that case the relator, an unlicensed physician, acted under a registered trade name, while in this case the plaintiff acted in the name of the business corporation as its manager.  Each method was lawful, if the business was lawful, and the business was just as lawful for that relator as for this corporation. Indeed it is apparent that for all practicable purposes the plaintiff here was the corporation.  Very likely the reason why he incorporated under the Business Corporations Law was that he might escape the need of obtaining the approval of the State Board of Charities and of a justice of this court (192 N. Y. 458), as one or both of such authorities might have insisted

upon knowing the ingredients of the medicine to be administered in the " Gatlin Treatment," which the plaintiff even at the trial hereof declared he did not know, and of which the physician of the institute was also ignorant.

That the treatment amounted to the practice of medicine by some one cannot be doubted. Indeed, the trial justice in effect so charged. According to plaintiff's own evidence, such treatment included the giving of pills, and also of some liquid substance which caused nausea. Indeed, plaintiff's advertisement termed it "medicine." Moreover, it was clearly established that the plaintiff had the corporation hold itself out as treating the patients and curing them even in three days in its own name, precisely as the relator did in the Lederman Case (*supra*). (See 168 App. Div. 243.)

The plaintiff himself drew the advertisements. Those declared that the institute treated and cured and even guaranteed a cure for two years, viz.: " *Our* guarantee covers a period of two years." In the advertisements published by the plaintiff in the New York *World* there is not the slightest reference to any physician. No such reference appears until in the business card, by the words " Dr. Wm. H. Upton, Medical Director." In the sensational circular entitled " The Whirlpool of Drink," written by plaintiff, the institute is repeatedly spoken of as the treating party, viz.: " The Gatlin Institute of New York accepts all patients under contract to cure   *   *   * in three days." It also states that the physician " in all cases prescribes the Gatlin treatment; " that " it is a secret remedy; " and even that the treatment may be given at one's home, viz., " will be sent by express to anyone who is unable to come to the New York Institute," evidently meaning that the institute will thus treat a patient without having his physician even see him or any one else in its behalf.

The plaintiff admitted that he told defendant's representative, when he went to see him before the institute opened for

business, that the business of its doctor was "to prescribe the Gatlin treatment." In this connection it should be noted that according to plaintiff's own testimony he was at that time advised, by the lawyer who incorporated the company for him, to go to the defendant and ascertain if the company's proposed business would be lawful, and that he did so and was told by defendant's representative, its chief counsel, in effect, that such business would be illegal, and that if he conducted it he would be arrested. It is apparent, therefore, that the plaintiff was well warned before he attempted his course of business.

The physician of the institute, who in all cases prescribed the Gatlin treatment, was not paid by the patient at all, but by the corporation, and not even by it a fee for each case, but a salary for a specified period. A Dr. Wheeler, who in the absence of Dr. Upton occasionally acted, was paid by the corporation a fee of five dollars in each case.

In short, it seems to me plain that the criminal case against the plaintiff was precisely like the Lederman Case (*supra*) in all essential particulars, and that he should have been convicted instead of being acquitted by the Court of Special Sessions, and that probable cause for his prosecution by the defendant was established as matter of law. The defendant's motion for a new trial on the ground that the verdict was contrary to the law and contrary to the evidence was sufficient to raise and preserve that question for review here. Moreover the exceptions to the charge, as above noted, were also sufficient to that end.

*Second.* Assuming that the law of the case was correctly stated by the trial justice, namely, that the taking of advice or prescription from a licensed physician in each case was sufficient to save the corporation from violating the statute, still I think that probable cause was established as matter of law, certainly quite as much as it was in Rawson v. Leggett (184 N. Y. 504; and in this court, 97 App. Div. 416), in which

case the plaintiff in a similar action to this, at the Westchester Trial Term, obtained a verdict for $25,000; and there was affirmance here; but the Court of Appeals, by a vote of four to three, reversed.

In the case here at bar the trial judge charged the jury, in effect, that if the affidavit of Darragh, upon which defendant made its criminal complaint, were true, the plaintiff was in fact guilty of the crime charged. This was, I think, entirely correct. That affidavit stated that upon Darragh's applying and presenting himself to plaintiff at the institute for treatment and making a bargain with him for treatment for the sum of $125, the plaintiff himself treated him for a time, one or two days, without any doctor at all appearing, and that in that interval plaintiff himself administered to him a hypodermic injection and gave to him certain pills and liquid medicine. It is, of course, manifest that if that were true Darragh could not have been prescribed for by the physician of the institute before plaintiff administered such treatment, unless the physician gave a general prescription for the use of the Gatlin treatment for whomever might apply. Of couse, it is not claimed or even pretended by plaintiff that that was the course pursued. The trial justice, however, submitted to the jury the question of probable cause as to the Darragh affidavit, upon the issue whether defendant's representative did and could reasonably believe Darragh's statements therein. The language of that justice in making that submission was quite graphic, even intimating that the jury might regard Darragh as " a drunken bum off the street " and generally as of no or little account. I find nothing in the evidence to warrant that view, except the naked fact that he did take plaintiff's treatment. It is undisputed that he had money enough to pay and did pay the plaintiff his charge of $125 or $130. The burden of proving want of probable cause rested upon the plaintiff, although the charge upon that point was

not as clear as it should have been. The fact of acquittal does not stand as any evidence of want of probable cause.

I perceive in the record nothing which tends to indicate that defendant's representative should not have believed Darragh and acted upon his statement and affidavit. The plaintiff and his doctor had Darragh under their personal observation and treatment for five days, yet neither in any manner testified that he was a "bum," or to anything in his appearance or otherwise, to his discredit. As I read the record, no prescription by any physician in the Darragh case was produced, either at the trial of the criminal action or at that of this case, although called for upon the latter. It is notable that neither the plaintiff nor the doctor gave any testimony upon direct examination as to the Darragh incident, and the doctor did not testify about it at all. The defendant's representative, the lawyer, Mr. Dyer, testified that Darragh came to his office and made his complaint, and that thereupon he took his statement in writing and later in the form of the affidavit in evidence; that Darragh even stated then that he had brought a civil action in a municipal court to recover back the money that he had paid the institute. The lawyer further testified that he followed the matter up by consulting with his chief, Mr. Vandiver, and that they directed a regular investigating agent of the defendant to go to the institute and investigate, which she, the witness, Mrs. Benzecry, did, and thereafter made an affidavit stating what she ascertained; and that upon both said affidavits he made or caused to be made the complaint. The affidavit of said agent purported to state in detail the conversation by the plaintiff with her at the institute. In that conversation as thus detailed plaintiff spoke of the business as being that of the institute, and said nothing about any physician there. Before presenting the information, defendant's representative laid the matter before the district attorney.

I must say that I can see nothing to criticise unfavorably in

the action of the defendant's representative as having been hasty, inconsiderate or otherwise censurable. The trial justice charged that he was under no duty to ask the plaintiff for any explanation. Before taking Darragh's affidavit he even cautioned him against making an untruthful statement therein. Darragh stated to him that he had been an inebriate for many years. There was nothing in his statement to indicate that his was not a genuine case of treatment by the plaintiff. Darragh was a witness at the trial of the criminal case, but was not produced at the trial herein nor his absence there accounted for. Apparently he had in the interim disappeared. There was no evidence in behalf of the plaintiff or otherwise to indicate that Darragh was generally unworthy of credence.

To my mind the case here was much stronger for the defendant than was the case in Rawson v. Leggett (*supra*). In that case plaintiff's counsel maintained successfully, at least at the Trial Term and here in this court, that the facts that the informer there was himself the confessed thief, and that for some considerable time after he confessed he failed to declare that Rawson (the plaintiff) had had anything to do with the embezzlement; and that only later, when the head of the the defendant firm, having him in its power, asserted to him that Rawson had received a certain amount of the stolen money ("Didn't he?"), did the informer say, in effect, "No, not so much as that," but only a certain sum, mentioning a much less one; and the further fact that Rawson had for many years been the trusted confidential credit man of the defendants, holding a very important position with them, made it competent for the jury to find that the defendants acted unreasonably in having Rawson prosecuted without first calling upon him for explanation or denial of the accusation. The majority of the Court of Appeals, however, took the other view and held as matter of law that want of probable cause was not proven. In this case the informer, Darragh, was no thief and had made

no contradictory statements. The reasoning of the final determination in Rawson v. Leggett (*supra*) was lately applied and perhaps even extended by this court in the case of McCarthy v. Barrett (144 App. Div. 727). In that case the criminal complaint had been made merely upon the statement of a detective that a co-employee of the plaintiff, who had confessed to the theft, had also declared that the plaintiff had been a party to it.

It is my conclusion, therefore, that Darragh's statement and affidavit coupled with that of Mrs. Benzecry, did constittue, as matter of law, probable cause for the criminal prosecution of the plaintiff.

*Third.* Assuming, as above, that the law of the case was correctly declared by the trial justice as above summarized, I think that probable cause was established because the evidence demonstrated that the advice or prescription of a licensed physician, upon which only plaintiff claimed the institute treated, was a mere sham and pretense. In all instances such prescription was merely treatment by the Gatlin method. Plaintiff's preliminary statement to defendant's representative was in effect that such would be the prescription in each case. The circular which he drew expressly so stated. There was in the prescription no modification or direction as to time or quantity of the dose, or anything of the sort. The medicine was a secret. Neither the plaintiff nor the physician knew its ingredients. The plaintiff had purchased from the parent institute at Chicago the right to use the remedy in New York, and obtained the medicine from there apparently in bulk. The giving of a prescription by a physician must of necessity involve the exercise of judgment as to the particular case, and as well some scientific knowledge of the nature of the medicine prescribed. Here the physician could have possessed no such knowledge, and even the plaintiff, the manager, did not have it. Hence such a prescription was a mere shame and pretense.

I conclude, therefore, that if defendant's representative had,

as the learned counsel for the respondent claims he should have done, treated Darragh's affidavit as insufficient, and, therefore, before instituting proceedings investigated further and ascertained the true practice of the institute, as the same was revealed at the trial by plaintiff's evidence, he would have had ample probable cause to prosecute the plaintiff.

*Fourth.* The learned trial justice erred to the manifest prejudice of the defendant in several rulings as to matters of evidence.

(a) Upon the cross-examination of Dr. Upton, the physician of the institute, the inquiry to show that he made no analysis or other scientific examination to ascertain the ingredients of the medicine was excluded. This proof was entirely competent to show that the prescriptions given by the physician were mere pretenses based upon no scientific knowledge. Notwithstanding the somewhat evasive statements of the physician in his testimony, it is evident that he had no knowledge or information as to the ingredients of the medicine. Still the direct inquiry should have been allowed, and, as I think, the exception to its exclusion was not only technically but substantially good.

(b) Various inquiries as to the qualifications of Dyer, defendant's lawyer representative who instituted the prosecution, were excluded. It appeared that defendant, in prosecuting the plaintiff, acted chiefly upon the advice of its junior counsel, Mr. Dyer. I think that evidence that the lawyer, upon whose advice as to the law and as to the weight of the evidence defendant relied, had had ample experience in that particular department of law, and further, that he had carefully read and considered the leading decisions of the courts upon the subject, was competent and of substantial weight, both on the issue of want of probable cause and upon that of malice as affecting the amount of the damages. Any evidence tending to show its good motives and the care which it exercised in making such prosecution was competent certainly upon the question

of damages.    The character and legal experience of the man
whom it permitted to represent it in the matter constituted
material and weighty proof upon that point.    The irony of the
situation is apparent from this record, by which it appears
that the learned counsel for the respondent by his objection
prevented the defendant from proving the character and legal
experience of that representative, and yet that counsel in his
brief complains that the defendant trusted so important a mat-
ter to a mere law clerk serving on a salary.    Had he not,.
by his objection, excluded the proof, he might have learned
perhaps that that clerk had had large legal experience in that
particular branch of the law and, therefore, was even much
more competent therein than many an old general practitioner.
The worth of experience is not to be measured alone by the
limit of time.

Similar error was committed in excluding, over defendants'
objection and exception, like competent evidence as to the
qualifications of Mr. Vandiver, defendant's chief counsel, to
whose final judgment Dyer submitted the case before begin-
ning the prosecution.    Like error was also committed in ex-
cluding in like manner evidence as to the qualifications of
the investigator, Mrs. Benzecry, whom defendant's such coun-
sel employed to make a preliminary investigation of the matter.

(c)  The trial court, upon plaintiff's motion, struck out Dyer's
testimony that before taking Darragh's affidavit he admon-
ished him as to his liability for perjury in the event he made
any untrue statement therein.    That evidence was plainly
competent, at least upon the question of the amount of dam-
ages, and indeed, as I think, upon the issue of probable cause
as well.    To that ruling, however, defendant's counsel took
no exception.

Those several errors upon matters of evidence appear to indi-
cate a substantial misconception as to the nature of the case
and the governing rule as to damages.

The defendant was engaged in an entirely lawful and indeed, as the trial justice in effect told the jury, praiseworthy work of driving out of business quacks and unlawful practitioners, to the manifest benefit of the public. As Mr. Justice CARR, writing for this court in the McCarthy Case (*supra*) said, in effect, if one cannot in instituting a criminal prosecution rely upon such information as defendant's representative here had "without subjecting oneself to pecuniary risk  *  *  * it will become quite difficult to secure a prosecutor, and the administration of the criminal law will be all the more difficult." (144 App. Div. 731.)

I regard the verdict here as directly against a sound and necessary public policy and am convinced that it should not stand. I advise, therefore, that the judgment and order appealed from be reversed, with costs, and that the complaint be dismissed with costs.

JENKS, P. J., and STAPLETON, J., concurred; RICH, J., read for affirmance.

RICH, J. (dissenting):

I cannot agree that the trial court acted under " an entirely mistaken theory of the law," or that plaintiff should have been convicted, or that the trial court should have found the existence of probable cause as a matter of law. In People ex rel. Lederman v. Warden of City Prison (168 App. Div. 240), the question of the right of an officer of a corporation authorized " To maintain and operate institutes for the cure of the liquor and drug habit " was not presented. In that case the defendant was an individual holding himself out to the world under a registered trade name, as being able to diagnose and treat diseases, and undertaking to do so. Notwithstanding this authority, which has tended to make me waver at times, I remain of the opinion that the corporation, having acquired

the legal right to treat the drink and drug habit, could treat it as it saw fit, "this side of giving drugs and medicine."

I do not consider Matter of Co-Operative Law Co. (198 N. Y. 479) as an authority binding in the case at bar, because in that case the defendant, who was charged with the unlawful practice of the law, claimed to have acquired the right to do so through its incorporation under the Business Corporations Law (Gen. Laws, chap. 41 [Laws of 1892, chap. 691], as amd.; now Consol. Laws, chap. 4 [Laws of 1909, chap. 12], as amd.), which stated its objects to be, "to furnish to its subscribers legal advice and service; to operate in connection with the above a department of law and collections for the use and benefit of the subscribers of the company only, and to accomplish these objects said company proposes to employ and maintain a staff of competent attorneys and counsellors at law to give such advice; and to prosecute or defend, through such counsel, any claim or suit entrusted to its care by subscribers." The court held that the contention of the corporation was without support or justification, and that it was guilty of a violation of the provisions of section 280 of the Penal Law, which made it unlawful for any corporation to practice law, *to render or furnish legal services or advice, to furnish attorneys or counselors for that purpose, or to advertise for or solicit legal business.*

In the case at bar the corporation was not organized to practice medicine and did not claim the right to do so. It was organized "To maintain and operate institutes for the cure of the liquor and drug habit." I know of no provision of law making it unlawful to do this, to advertise for business, and to employ and furnish licensed physicians to prescribe for patients when necessary. I think it had the right to conduct its business in any manner it pleased, other than by prescribing and administering drugs and medicines. The only material issue presented in the trial court was that of the existence of

probable cause, which was submitted to the jury as a question of fact without exception.

In reference to Darragh's statement: Defendant's acting representative, Dyer, testified that in causing plaintiff's arrest he did not rely upon the statements or affidavit of Darragh, and was unable to point to anything in the affidavit of Mrs. Benzecry which led him to believe that plaintiff was practicing medicine. I believe Rawson v. Leggett (184 N. Y. 504) is also distinguished from the case at bar; in that case before causing plaintiff's arrest, " an investigation which was cautious and painstaking in the extreme " was made; here no such investigation was made. They acted solely on the statement and affidavit of Darragh, upon which they placed no weight and admittedly did not rely, and the report and affidavit of Mrs. Benezecry, which did not show the commision of any offense.

I think the defendant has been properly held to respond in damages, and, therefore, vote to affirm.

Judgment and order reversed, with costs, and complaint dismissed, with costs.