## McCoy v. Griffith and Mudd.

(Decided November 10, 1922.)

Appeal from Henderson Circuit Court.

1. Master and Servant—Action for Personal Injuries.—Before one can be held liable as an employer for injuries suffered by an alleged employe, the relation of master and servant must be shown to exist at the time of the injury, and the real test by which to determine the existence of that relation is to ascertain whether, at the time when the injury was inflicted, the alleged servant was subject to the orders and control of the alleged master, and was liable to be discharged by him for disobedience of orders or misconduct, and in determining that question the mode of payment of the alleged employe is a circumstance which may be considered, but is not in and of itself conclusive.

2. Master and Servant—Negligent Injuries Sustained by Servant.—A general master is not liable for negligent injuries sustained by his general servant whom he might loan to another to perform special or particular services for the latter, unless he retains control over the general servant and over his work while the latter is performing the services for which he was loaned.

3. Master and Servant—Negligence—Evidence.—Under the facts, as set out in the opinion, it is held that the relation of master and servant did not exist as between the plaintiff and one of the defendants at the time the former sustained his injury while working at a saw mill belonging to and operated by the other defendant.

4. Where the proof shows that a circular saw used in manufacturing lumber out of logs cannot be guarded or protected, as contem-

plated by section 331a-10 of the 1922 Kentucky Statutes, the fact that it was not guarded can not be relied on as constituting negligence sustained by an infant employe working at the saw mill, since it will not be presumed that the legislature intended to require the performance of the impossible.

5. Master and Servant—Workmen's Compensation Act.—Where the proof shows that the operator of a saw mill employs regularly as many as three hands or more, and that it is necessary to do so in order to operate the mill, the operator is then included in the provisions of section 4880 of the 1922 Statutes, which is a part of our workmen's compensation act; and, unless he accepts the provisions of that act he can not rely on the defenses of contributory negligence or assumption of risk in a suit against him by an injured servant whose injury is alleged to have been inflicted through the negligence of the operator (section 4960 of the. statutes).

F. J. PENTECOST for appellant.

YEAMAN & YEAMAN for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming as to appellee Griffith and reversing as to appellee Mudd.

This ordinary action was filed in the Henderson circuit court by appellant and plaintiff below, Dewey McCoy, against appellees and defendants below, J. T. Griffith and Rodney Mudd, seeking a judgment against them for $20,117.00, upon the ground that plaintiff while serving defendants as an employe at a saw mill sustained injuries whereby he lost his left arm, and which was produced, as alleged, through the negligence of defendants in not furnishing him a reasonably safe place in which to perform his work, and in not guarding the saw against which plaintiff was thrown and in doing so lost his arm, as required by section 331a-10 of the present Kentucky Statutes, since plaintiff at. the time lacked about one month and ten days of being twenty-one years of age. The petition also set out in detail the facts showing the unsafety of the place where plaintiff was at work at the time as an off-bearer of lumber, and further averred that defendants regularly engaged in the operation of the mill, and which was necessary to operate it, three or more employes and that they came within the provisions of our workmen's compensation act, as is provided in section 4880 of our statutes. The answer denied the allegations of the petition, except the one as to plaintiff's injury, and the one as to the ownership and operation of

the mill by the defendant, Mudd. The defendant, Griffith, also denied that he either owned, operated, or had anything to do with the operation of the mill, or that he employed plaintiff to work thereat, nor was the latter in any sense his servant. Appropriate pleadings made the issues and upon trial there was a verdict for plaintiff against both defendants for only the special damages claimed of $117.00, which he alleged he incurred.for hospital and medical bills. Plaintiff's motion for a new trial was overruled, and he has appealed, insisting upon various grounds, the material ones of which will be disposed of in this opinion.

There is no cross appeal by either of defendants, but the question as to the liability of the defendant, Griffith, for any of the damages sought to be recovered is vigorously argued by both sides and we will first address ourselves to its determination. It is conceded that a prerequisite to liability in cases of this kind is that the relation of master and servant must be shown, and whether it exists must be determined from the facts as developed by the proof. There is little contrariety in the evidence found in this record although it is not entirely harmonious upon all points, yet the divergencies between plaintiff's testimony and that of the defendants on the pertinent issue are not such as to materially affect the legal status of the parties with reference thereto. In the determination of the question a brief *resume* of the testimony will be necessary.

Defendant, Griffith, owned two or more farms in Henderson county, upon one of which the father of plaintiff and his family resided as a tenant, and he was under contract to grow certain crops and to make certain clearings, while Griffith had agreed to construct certain barns and perhaps other outbuildings on the farm, and probably to do the same thing as to another or other farms which he owned. On one of the farms, other than the one upon which plaintiff lived with his father, there was a body of timber and Griffith hired his co-defendant, Mudd, to saw into lumber as much of the timber as was necessary to construct the buildings which he had agreed to erect and was to pay him therefor sixty cents per hundred feet for all lumber sawed. Mudd owned his own mill, hired and paid his own hands and operated his mill at such times and for such periods as he saw proper and free from any control of Griffith, except the latter would fur-

nish bills for the character of lumber to be sawed, and of course, as is usual in such cases, he was not prohibited from urging along the sawing so as to enable him to accomplish his purpose in erecting the buildings, which gave him no power of control but was only the exercise of interested anxiety to have the sawing done as rapidly as conditions would permit. At the time Mudd was employed, upon the terms stated, he was operating his mill with a borrowed engine which the lender called for and took away before the time for him to commence work under his contract with Griffith. When the latter learned of that fact he interested himself in assisting Mudd to procure another engine. Negotiations had already been started by Mudd to buy one from a neighbor by the name of Taylor for the price of $300.00, but the proposed purchaser could not make satisfactroy arrangements as to payment and Griffith finally agreed with him to pay for the engine and take the price out of the bills for sawing the lumber, withholding half of each bill when presented until the entire $300.00 was paid, and that arrangement was carried out according to its terms. At and prior to April 16, 1919, there was and had been a scarcity of help so that the saw mill did not run regularly. A day or two before the accident, which occurred on April 16, 1919, plaintiff, his mother and his brother testified that Griffith told plaintiff and his brother that he wanted the two to assist Mudd in operating the saw mill, if they could do so, and that he promised to see that his co-defendant would pay for the services if undertaken, and that on the next day or shortly thereafter plaintiff and his brother went to the mill and were employed by Mudd and after plaintiff had worked something like three hours he was caused to fall against the saw and sustained the injuries for which he sues.

Griffith testified that in the conversation with plaintiff he was informed that he and his brother had worked at the mill some days prior, and that he then said: "I am truly glad you did, and I hope you and Pete will, because your papa is anxious to get the stable." But, as stated, according to our view, the difference between the two versions as to what happened on that occasion is immaterial. It furthermore appears in the record that there was some kind of understanding between plaintiff's father and Griffith, at the time the tenancy contract was made, that the latter would furnish employment on the farm to the tenant and his two sons when possible while

they were not engaged in making the clearing they had agreed to make, or in cultivating their crop. The evidence, however, does not show that there was an absolute agreement for such continuous employment, but rather that if Griffith needed any work done on the farm he would give preference to plaintiff, his father and his brother. It also appears, uncontradictedly, that on the first employment of plaintiff by Mudd the latter paid him his earned wages as was also done for the services rendered on the day the accident happened. The question, therefore, is whether, under the facts as thus disclosed by the record, the relation of master and servant existed between defendant, Griffith, and plaintiff.

Whether the relation of master and servant exists so as to render the former liable for injuries sustained by the latter is a question which is frequently a difficult one to determine. It is everywhere recognized that certain elements must exist before the relation arises, but the trouble experienced by the courts is whether, under the testimony, those elements are shown, or whether the evidence is sufficient to submit the issue of their existence or non-existence to the jury. The general rule guiding the courts in determining whether the relation exists is thus stated in 18 R. C. L. 490-491: ''The relation, whatever term may be used to describe it, exists, it ordinarily is said, whenever one person stands in such a relation to another that he may control the work of the latter and direct the manner in which it shall be done. The essential elements are that the master shall have control and direction not only of the employment to which the contract relates, but of all of its details, and shall have the right to employ at will and for proper cause discharge those who serve him. If these elements are wanting, the relation does not exist. Again, the manner in which payment is made may under some circumstances be decisive of the question, but this is not an invariable criterion by any means.'' Some of the cases cited in the notes and which fully sustain the text are: Bosswell v. Laird, 8 Cal. 469, 68 Am. Dec. 345; Sickles v. Mather, 20 Wend. (N. Y.) 72, 32 Am. Dec. 521; McColigan v. Pennsylvania R. Co., 214 Pa. St. 229, 63 Atl. 792, 112 A. S. R. 739, 6 L. R. A. (N. S.) 544; Hand v. Cole, 82 Tenn. 400, 12 S. W. 922, 7 L. R. A. 96; Baltimore Boot, etc. Co. v. Jamar, 93 Md. 404, 49 Atl. 847, 86 A. S. R. 428; notes to the case of Brown v. Smith (Ga.), reported in 22 A. S. R. 456, and notes to the

case of Hardy v. Shedden Company, reported in 37 L. R. A. 33.

The criteria for the determination of the question, as embodied in the foregoing excerpt, have been approved and adopted by this court in the cases of Madisonville, etc. R. R. Co. v. Owen, 147 Ky. 1; Employers' Indemnity Co. of Philadelphia v. Kelly Coal Co., 149 Ky. 712; Williams v. National Cash Register Co., 157 Ky. 836; Carter Coal Co. v. Howard, 169 Ky. 87, and many others referred to therein. The facts of the last cited case are very much similar to those presented by this record, in that the appellant, coal company, hired one Penland to saw timber for it under a contract very similar to the one in this case, but plaintiff therein was injured while hauling the logs to the mill or the lumber away from it, and there was a contrariety in the testimony as to whether that service was to be wholly performed by Penland or whether the defendant, coal company, had any connection therewith, in which case it was held that the question of whether the relation of master and servant existed between plaintiff and the coal company was one of fact to be submitted to the jury. The evidence, as recited in the opinion, showed a greater control by the coal company over the work performed by Penland than was possessed by Griffith in this case, and in the opinion it was said: "If, under the contract between the coal company and Penland, the coal company had no control or direction over the work, except to see that it was done properly and according to contract, and Penland used his own judgment and methods in the execution of the work, then Penland was an independent contractor," and, consequently, the coal company would not be liable as master or employer of plaintiff. In reciting the evidence it was furthermore said in that opinion: "On the other hand, we have evidence that Penland furnished his own saw mill, hired and discharged his own assistance, was paid so much per thousand feet, and in the method of doing the work was not subject to the control of the defendant," which, if true, according to the opinion, exonerated the coal company.

If we should accept as true the testimony of plaintiff and that of his mother and brother as to the conversation with Griffith before the accident happened, we would then have a case wherein the latter had no control over plaintiff as to whether he should or should not work at

the mill, or any control over him if he did undertake it, or the right to control him, or any other employe at the mill, while engaged in it. The mere fact that he expressed his wish or desire that plaintiff would work at the mill when not otherwise engaged so as to facilitate the sawing of the lumber, can not alter the case, since there existed no right to require him to do so.

But it is insisted, as we understand counsel, that plaintiff was in a sense the general servant of Griffith and that the latter loaned him to his co-defendant, Mudd, to work at his saw mill, and for that reason he was liable to planitiff for any injury which he sustained while working at the mill. The trouble with that contention is, first, that it assumes the existence of the relation between Griffith and plaintiff of general master and general servant, when under the proof it was only that of landlord and tenant, and, second, that it is not a correct statement of the true principle, unless the general master has charge of the work for which his general servant was loaned and may exercise control of it while the work is being performed. 18 R. C. L. 493; note to the case of Wilson v. Valley Improvement Co., 1913B Ann. Cas. on page 796; American Machine Co. v. Ferry, 141 Ky. 372, and Adams Express Co. v. Smith, 24 Ky. L. R. 1915. The text in R. C. L., which is supported by the cited cases, says: ''It is well settled that one who is the general servant or another may be loaned or hired by his master to another for some special service so as to become, as to that service, the servant of such third person, the test being whether, in the particular service which he was engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the person to whom he is loaned or hired. It makes no difference whether the proprietor to whom the servant is loaned actually exercises his right of control or direction as to the details of the work, or simply sets the servant to do what is necessary, trusting to his expert skill for the result. To establish the fact that the servant of one has transferred his services to another *pro hac vice,* it must appear that he has assented, expressly or impliedly, to such transfer.''

Another view of the case will serve as a further elucidation of the question, which is, whether Griffith would be liable to another fellow servant or stranger who might sustain injuries through the negligence of plaintiff while

he was at work at the saw mill, under the doctrine of *respondeat superior,* which would be true (at least as to a stranger), if plaintiff was his servant while committing the negligent act. The very statement of the proposition is sufficient to our minds to show that no such liability would attach under the proven facts, and we, therefore, conclude that no liability was shown against the defendant, Griffith; but the judgment against him can not be reversed, since he is not questioning it on this appeal.

The court properly refused to submit the issue as to the alleged negligence in not properly guarding the saw, as it is insisted is contemplated under section 331a-10 of the statutes, since the proof showed without contradiction that it was impossible to do so with a circular saw while sawing lumber, and we do not think it was intended by the legislature in the enactment of the statute to require the impossible. No instruction on contributory negligence should have been given because the evidence conclusivly showed that, under section 4880, *supra,* of the statutes, the saw mill was an institution or factory which is required by the act to accept the provisions thereof, or be deprived of certain defenses, among which are contributory negligence, and assumption of risk (section 4960 of the statutes). For the same reason the latter part of instruction number 2, with reference to the injury being ''an accident incident to such employment,'' was error because in effect it was one on assumption of risk. Under the evidence heard on the trial the only instructions necessary to be given were numbers 1, the first part of number 2, which was a counterpart of number 1, number 5, on the measure of damages, and number 7, defining ordinary care. Instructions number 3, 4 and 6 related to the liability of defendant, Griffith, the grounds for which, in view of this opinion, will not arise on another trial, and instruction 5a on contributory negligence will not be given on another trial for the reasons hereinbefore stated.

For the errors pointed out the judgment is reversed as to the appellee, Mudd, but for the reasons stated it is affirmed as to the appellee, Griffith.