[Civ. No. 6000. First Appellate District, Division One.—October 24, 1927.]

LUCY PILGER, Appellant, v. THE CITY OF PARIS DRY GOODS CO., Respondent.

Wal J. Tuska for Appellant.

Walter H. Linforth for Respondent.

CAMPBELL, J., *pro tem.*—This is an appeal from a judgment based upon a motion for nonsuit made by defendant at the close of plaintiff's case.

The facts disclosed by the evidence are as follows: The respondent, The City of Paris, a corporation, is a retail store in the city of San Francisco, dealing in dry goods and various kinds of merchandise and having different departments. In the month of September, 1923, appellant, Lucy Pilger, employed the services of Dr. Robbins, a chiropodist, who had an office in the store of respondent corporation and whose office adjoined the beauty parlor conducted on the second floor of the building occupied by respondent for the sale of merchandise and commodities. The name of the chiropodist and the location in the building where the office of the chiropodist was located were unknown to appellant, she being directed to the chiropodist's office by one of the salesmen employed in the store. Appel-

lant went to the place to which she had been directed, and after waiting there a little time while the chiropodist was finishing some work for another lady was treated by the chiropodist, which consisted of trimming the nails and trimming callous off the soles of appellant's feet. In the course of the treatment the chiropodist discovered that there was callous on the bottom of the little toe of appellant's left foot and proceeded to remove it, but while so attempting to remove the callous the knife or other instrument the chiropodist was using entered the flesh of the little toe of appellant's left foot, causing a flow of blood and, as described by appellant, causing severe pain. The chiropodist immediately bandaged the bleeding foot, later removing the bandage and putting on some medicine, submitted the foot to violet ray and again bandaged it, appellant in the meantime, according to her testimony, suffering acute pain. The chiropodist tried different methods at different times to heal the wound and to alleviate the pain and suffering; she sprayed the wound, used an antiseptic, probed the wound and squeezed out pus. As stated by appellant, the pains continued from September, 1923, until the middle of the following January, when a regular medical practitioner was called in. The physician, Dr. Marston, after examining the foot found it infected, that mortification had set in, and determined after consultation with another physician to amputate the little toe of the left foot to prevent the poison from spreading, and the toe was accordingly amputated. Appellant testified that she endured months of suffering following the chiropodist's treatment. Prior to that time appellant had no disease in either of her feet and did not suffer from any disease at the time she had her nails trimmed and the callous removed from her left foot and toe and her blood was in good condition. According to the testimony of appellant she had been buying goods at defendant's store for a number of years and maintained a charge account there, and that when the chiropodist first treated her she told the chiropodist that she had a charge account at the store and requested the chiropodist to have the charges for the treatment charged to her on the books of the store and to have the charges put on her bill. Accordingly when appellant received her next bill from respondent there appeared upon the bill, among various items

for goods sold appellant, the following items: September 7th, 1 chiropody treatment, $2; September 17th, 1 chiropody treatment, $2; December 12th, 1 chiropody treatment, $2.50; December 22d, 1 chiropody treatment, $1.

Appellant has assigned twelve specifications of proof made under the heading "appellant has made a clear case and produced sufficient evidence to go to the jury," all of which are covered by specification XII—"that sufficient evidence was produced as to the injury, neglect, carelessness and responsibility of the respondent to require explanation and evidence on the part of respondent to offset the case made by appellant," and we shall, therefore, address ourselves to this specification.

In order to hold respondent liable for the negligence of the chiropodist it must be made to appear from the evidence that the relation of master and servant existed at the time of the alleged negligence, and the burden of establishing this relationship is upon the party asserting it. There is no evidence in the record to show that respondent operated the chiropody department or that the chiropodist was in any way employed by respondent or that the entries of the charges for such service on the books of respondent corporation were otherwise than at the request of and for the convenience of appellant. "A servant is one who is employed to render personal service to his employer, otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter, who is called his master" (Civ. Code, sec. 2009).

The relation of master and servant or employer and employee exists whenever one person stands in such relation to another that the master or employer may control the work of the servant or employee and direct the manner in which it shall be done (*Boswell* v. *Laird,* 8 Cal. 469 [68 Am. Dec. 345]; *McColligan* v. *Pennsylvania R. Co.*, 214 Pa. 229 [112 Am. St. Rep. 739, 6 L. R. A. (N. S.) 544, 63 Atl. 792]; *Hand* v. *Cale,* 88 Tenn. 400 [7 L. R. A. 96, 12 S. W. 922]), and the essential elements are that the master or employer shall have control and direction, not only to the employment to which the contract of employment relates, but of all its details (*McCoy* v. *Griffith,* 196 Ky. 406 [244 S. W. 871]; *Flaherty* v. *Helfont,* 123 Me. 134 [122 Atl. 180]). "It is

well settled that in order to hold the master responsible for the negligence of a servant he must have the power of supervision of the servant's conduct. Indeed the words 'master' and 'servant' imply such power'' (*Cotter* v. *Lindgren*, 106 Cal. 607 [46 Am. St. Rep. 225, 39 Pac. 950]). There is no evidence that respondent in any manner controlled the work of the chiropodist's business. As a matter of law appellant could not direct or control such work, not being a licensed chiropodist as required under the law of this state, which expressly requires a chiropodist to be licensed after having passed an examination and having pursued a course of study, and which law does not authorize the licensing of a corporation to practice chiropody (Stats. 1913, p. 722, as amended; Stats. 1921, p. 995). Appellant must be held to have known the law and therefore to have known that a department store could not practice chiropody.

The statute cited, after creating a board of medical examiners, provides ''for the purpose of this act chiropody shall be held to be medical, mechanical or surgical treatment of the human feet,'' and defines surgical treatment as follows: ''Surgical treatment shall be held to mean the surgical treatment of abnormal nails, corns, callousities, bunions and other minor foot ailments, not involving the bone structure.'' The same statute provides that a person in order to obtain a license as a chiropodist must have pursued a course of study, and also that any person practicing medicine in this state without at the time possessing a license issued in accordance with the act shall be guilty of a misdemeanor.

A corporation cannot be licensed to practice chiropody and therefore cannot in contemplation of law be a master over a servant concerning whose acts it could have no power of supervision (*Cotter* v. *Lindgren*, *supra*).

The statute requiring an examination as to the qualifications and knowledge of an applicant to practice chiropody and requiring a license from the state board places him, in so far as the question of master and servant is concerned, in the same category with lawyers, doctors, and dentists, and the authorities seem to be uniform that a corporation can neither practice nor hire lawyers, doctors, or dentists to practice for it. ''A corporation can neither practice

law nor hire lawyers to carry on the business of practicing law for it, any more than it can practice medicine or dentistry by hiring doctors or dentists to act for it (*People* v. *Woodbury Dermatological Institute,* 192 N. Y. 454 [85 N. E. 697]; *Hannon* v. *Siegel-Cooper Co.,* 167 N. Y. 244, 246 [52 L. R. A. 429, 60 N. E. 597]). The legislature, in authorizing the formation of corporations to carry on 'any lawful business,' did not intend to include the work of the learned professions. Such an intention, with the evil results that might follow, would require the use of specific language clearly indicating the intention. Recent legislation simply emphasizes and protects the established policy of the state, and although *ex post facto,* tends to show that no such object was in contemplation when the general term 'lawful business' was used in the statute to authorize the formation of business corporations. Business in its ordinary sense was aimed at, not the business or calling of members of the great professions, which from time out of mind have been given exclusive rights and subjected to peculiar responsibilities'' (*In re Co-operative Law Co.,* 198 N. Y. 479 [139 Am. St. Rep. 639, 19 Ann. Cas. 879, 32 L. R. A. (N. S.) 55, 92 N. E. 15]). No action for malpractice can be maintained against a corporation because of contract of employment of a physician. As is said in *Youngstown Park & Fall River St. R. Co.* v. *Kessler,* 84 Ohio St. 74 [Ann. Cas. 1912B, 933, 36 L. R. A. (N. S.) 50, 95 N. E. 509]: ''A contract to perform medical or surgical services by a corporation organized for the purpose of constructing, owning and operating a street railway, is not only *ultra vires* but is in strict conflict with the laws of this state regulating the practice of medicine and surgery, and is, therefore, void. Such a corporation cannot be directly liable for damages for malpractice of medicine or surgery.''

Counsel for appellant concedes the law to be as stated, but argues that it is not applicable here, stating in his reply brief: ''The cases cited by counsel for respondent and the law quoted by him may undoubtedly govern actions by duly accredited physicians, whether or no they have been licensed by the state to practice their profession, the mere state's license for a certain fee per certificate does not create or give him the ability of a physician or surgeon. He must possess the ability and must have passed a prescribed ex-

amination before a license is issued to him to practice.'' That is precisely the case with the chiropodist. Adopting appellant's language, ''he must possess the ability and must have passed a prescribed examination before a license is issued to him to practice''; that is, he must be found by the examining board issuing his license to possess the requisite qualifications concerning the ''medical, mechanical or surgical treatment of the human feet,'' as a dentist must possess the requisite qualifications to clean and extract teeth, repair them when diseased by artificial ones and perform surgical operations upon the teeth and jaw and incidental thereto upon the flesh connected therewith (*People* v. *De France,* 104 Mich. 563 [28 L. R. A. 139, 62 N. W. 709]; *State* v. *Beck,* 21 R. I. 288 [45 L. R. A. 269, 43 Atl. 366]).

A corporation cannot be held liable upon the theory of master and servant in the case where injury results to a patient treated by a chiropodist through his negligence any more than it can where the injury results from the negligence of a lawyer or physician or surgeon, as the chiropodist —like those of the learned professions mentioned—is certified by the state board as having acquired the requisite knowledge to practice, and which knowledge the corporation does not possess, and, consequently, cannot have the power of supervision over the chiropodist's conduct, which is essential to establish the relation of master and servant (*Cotter* v. *Lindgren, supra*).

There can be no doubt that a corporation may undertake to furnish the services of a competent physician or the services of a competent chiropodist, and that it may under certain circumstances be liable in damages—as, for instance, the person employed was not authorized to practice; that he was incompetent and the corporation had knowledge of his incompetency or in the exercise of due care could have obtained such knowledge, etc. No such case, however, is presented here. Neither the complaint nor the evidence supports such a theory.

This seems to be a case of first impression, not only in this state, but the question has not, so far as we are advised, been directly passed upon in any jurisdiction.

In our opinion the evidence presented by appellant is not sufficient to support a finding that the chiropodist was in the employ of respondent corporation—the evidence

merely showing that the chiropodist had an office in respondent's department store and that the fees for the service rendered were charged on the books of respondent corporation at appellant's request and for appellant's convenience, and, further, that the relation of master and servant under the circumstances disclosed by the evidence did not exist.

The motion for a nonsuit was properly granted, and the judgment is therefore affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 22, 1927.