## Leger v. A. Rollyson & Company et al.

(Decided March 15, 1932.)

J. B. JOHNSON and STEPHENS & STEELY for appellant.

J. J. TYE and L. O. SILER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In this action for personal injuries by Lemon Leger, an infant suing by his next friend, against Lester Rollyson and A. Rollyson, partners doing business under the firm name of A. Rollyson & Co., and Lester Rollyson, the trial court directed a verdict in favor of the defendants, and plaintiff appeals.

Though the defenses of contributory negligence and assumed risk were not available, inasmuch as appellees

were affected by the provisions of the Workmen's Compensation Act (Ky. Stats., sec. 4880 et seq.), and had not elected to operate thereunder, it was necessary for appellant to prove actionable negligence before he could recover. Horse Creek Mining Co. v. Frazier's Adm'x. 224 Ky. 211, 5 S. W. (2d) 1064. The proper determination of this question will necessitate a review of the evidence, which may be summarized as follows: Rollyson & Co. were engaged in the manufacture of staves in Whitley county, and Lester Rollyson was the sole owner of the business. One of the principal steps in the manufacturing was the equalizing of the stave bolts. The equalizer consisted of two 36-inch saws, 3 feet apart, and set on edge on a drum. The saws were used to cut the ends off the stave bolts, and make the bolts of equal length. The stave bolts were approximately 40 inches long, and to equalize them were placed on a shaft or swing and held by a hook, and pushed forward by hand between the saws. Just prior to the accident, appellant, who was about 17 years of age, was engaged in carrying strips, and his place of work was about 30 or 40 feet from the equalizer. In the absence of their employer, the men in the mill were under the direction and control of the head sawyer. The work of equalizing was performed by Bill Chandler and Harvey Hill, one of whom had gone for a drink. Claiming that he acted pursuant to an order of the head sawyer, appellant carried two stave bolts to the equalizer and equalized them. He then carried the third bolt, in the end of which was a knot. The bolt was slipping, and, when he reached to get it with the other hand, it jumped so that it threw his hand into the saw and injured his fingers.

The first question to be determined is whether appellant was authorized by the direction of the sawyer to do the work of equalizing. At first he testified that Edwards, the head sawyer, said, "Go down and help carry those up." Afterward his evidence was as follows:

"Q. 19. And when you went around were these men Harvey Hill and Mr. Chandler near the equalizers? A. No, when I went around they were having to carry them so far, Harvey Hill went to get a drink and when he got back Arch Edwards told us to go carry them bolts up and when he got back I was carrying them to the equalizers.

804

"Q. 20. Arch Edwards told you to go carry the bolts up they were so far away from the equalizers? A. He said, 'Go around and help the equalizers.'

"Q. 21. I understood you to say he told you to go around and help carry the stave bolts up? A. He didn't say go around and carry them up, he said to go around and help them.

"Q. 22. Didn't I understand you to say, young man, that he told you to go around and carry the stave bolts up? A. They were away at a distance and he said to go around and help them.

"Q. 23. Up to the time you got hurt and before that time, who had been carrying these bolts up and putting them into these saws? A. Well, Bill Chandler and Harvey Hill they had been using them. And they were using the closest ones but they got off so far away from them that they couldn't carry them up fast enough and keep up.

"Q. 24. I take it you went and got a bolt and put it in the saw? A. Yes, sir.

"Q. 25. And got another bolt and put it in the saw? A. Yes, sir.

"Q. 26. And when you got the third bolt that's when you got hurt? A. Yes, sir.

"Q. 27. Did you hear Harvey call to you and tell you to get away from those saws? A. No, sir.

"Q. 28. Did you hear him say, 'Don't do that?' A. No, sir.

"Q. 29. Now I wish you would tell the jury just the very words now that Arch Edwards said to you on that occasion? A. Well, he says, 'Get around there, boys, and get to helping them' he says, 'we can't let this thing stop.'

"Q. 30. Was that all he said? A. Yes.

"Q. 31. Then he didn't say to you to take up the stave bolts, did he? A. No, sir.

"Q. 32. And he didn't tell you to put them in those saws, did he? A. No.

"Redirect Examination.

"By I. N. Steely: Q. 1. He did tell you to help the equalizers? A. He told us to help the equalizers, yes.

"Q. 2. Well, you were helping them? A. Yes, sir.

"Q. 3. And doing what you understood he told you to do? A. Yes, sir.

"Q. 4. How close was Edwards to you when he told you to do that? A. In 10 feet.

"Q. 5. In plain view of you? A. Yes, sir.

"Q. 6. Did he say anything to you not to do that when you went to help the equalizers? A. 'No, sir.

"Q. 7. How much were they paying you? A. $2.00 a day.

"Recross-Examination.

"By J. J. Tye: Q. 1. Who, if anyone, went around to the place with you at the time you say you went there to bring up those bolts? A. Well, my father and Ballard Widner and all of them that wasn't busy.

"Q. 2. Did anybody put any in the equalizer besides you? A. Yes, sir.

"Q. 3. At the same time? A. Not at the same time, just take time about.

"Q. 4. And how close was your father to you when you say you put these stave bolts or this stave bolt in? A. He was just out there getting another block, fixing to carry it up there."

Arch Leger, father of appellant, testified that, when they got behind with the equalizing, other hands were assigned to go help the equalizers. Ballard Widner testified that Edwards, the head sawyer, said, "Boys, we're behind; let's all pick up a while and kindly catch up," By "pick up" he meant to cut the blocks off—equalize them. Each man would then go back, get a bolt, and put it through the equalizer. He heard Arch Edwards tell the boy to go around there. Appellees insist that the language employed by the head sawyer was not a direction to do the actual work of equalizing; it being argued that the evidence shows that the men employed at that work had to go too far for the stave bolts, and that all that the head sawyer meant was for the other men to assist in the work by bringing the stave bolts to a point where the equalizers could get them without having to go so far. The argument is persuasive, but

not so convincing that we can say as a matter of law that such was the effect of the head sawyer's order. What he said must be construed in the light of the circumstances, and of the practice and understanding among the men. The others understood the direction as an order to get the stave bolts and do the actual work of equalizing, and immediately proceeded to do the work in that way in the presence of the head sawyer.

Appellant had been at work there for only a short time, and, having heard the direction of the head sawyer and seen the men act thereon and do the work of equalizing, we are constrained to the view that it was for the jury to say, in the light of all the facts, whether the head sawyer meant for appellant to do the work of equalizing, or merely to carry the stave bolts to the equalizers.

The next question for consideration is whether there was sufficient evidence of negligence to take the case to the jury. The petition charged gross carelessness and negligence on the part of the defendants, its agents and servants, in placing appellant, who was an infant 17 years of age, to work at equalizing stave bolts, which was handling timber in front of two 36-inch saws, which were exposed, unprotected, and not properly rigged. The statute imposes upon the owner of any manufacturing establishment where any person under 21 years of age is employed, the duty properly to guard all vats, pans, saws, and machinery of every description which is palpably dangerous. Ky. Stats., sec. 331a-10. We have ruled that the statute does not require the guarding of a circular saw where it is impossible to do so. McCoy v. Griffith, 196 Ky. 406, 244 S. W. 871. Appellees insist that this was the situation with respect to the saw in question; the argument being that, unless there was an opening for the stave bolts, the sawing could not be done. The only evidence on the question is that given by appellant's father, who testified as follows:

"Q. 12. These saws had to be open to put the bolts into the saws at the arms? A. There could have been a sling put in over it to keep it from jumping when it come in. Could have been guards to hold the bolts on it and to keep anybody from getting their hands in the saws.

"Q. 13. They couldn't have cut the bolts off then, could they? A. Yes, sir, could have fixed the

guard to work behind the saw that would have saved anybody from hitting the saw with their hands.''

Without anticipating what would be the effect of additional evidence on the question, we cannot, in view of the foregoing evidence, hold as a matter of law that it was not possible to guard the saws. On the contrary, we are forced to rule that the evidence was sufficient to take the case to the jury.

It follows from what has been said that the court erred in directing a verdict in favor of appellees.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.