TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

———————————————————————

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 91-702 |
| of | : | |
| | : | May 13, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. DaVIGO | : | |
| Deputy Attorney General | : | |
| | : | |

———————————————————————————————————————————

THE HONORABLE TERRY B. FRIEDMAN, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May the Community Law Center, an agency which charges reduced fees for legal services rendered primarily to low income clients, incorporate as a nonprofit public benefit corporation?

CONCLUSION

The Community Law Center, an agency which charges reduced fees for legal services rendered primarily to low income clients, may not incorporate as a nonprofit public benefit corporation.

ANALYSIS

The Community Law Center in Oakland, California ("Center"), is a private organization which provides legal services primarily in the area of family law to poor and lower-income clients who do not have access to other legal services. It employs five attorneys and four legal assistants and charges $10 to $135 per hour depending upon the client's income and number of dependents. The fees collected constitute the primary source of funding for the Center.

The Center is not incorporated under the Professional Corporation Act (Corp. Code, §§ 13400-13410),[1] is not registered with the State Bar of California (Bus. & Prof. Code, § 6160), and is not licensed to practice law. The question presented is whether the Center may incorporate as a nonprofit public benefit corporation. We conclude that it may not.

———————————

[1] All section references hereafter are to the Corporations Code unless otherwise specified.

Under the Nonprofit Public Benefit Corporation Law (§§ 5110-6910), the activities and affairs of a nonprofit public benefit corporation are conducted under the direction of a board of directors (§ 5210). Section 5111 provides:

"Subject to any other provisions of law of this state applying to the particular class of corporation or line of activity, a corporation may be formed under this part for any public or charitable purposes."

"Other provisions of law" apply to the incorporation of organizations engaged in rendering professional services. With respect to the practice of law, section 6160 of the Business and Professions Code, part of the State Bar Act (Bus. & Prof. Code, §§ 6000-6228), provides:

"A law corporation is a corporation which is registered with the State Bar of California and has a currently effective certificate of registration from the State Bar pursuant to the Professional Corporation Act . . . and this article. Subject to all applicable statutes, rules and regulations, such law corporation is entitled to practice law. With respect to a law corporation the governmental agency referred to in the Professional Corporation Act is the State Bar."

A professional corporation under the provisions of the Professional Corporation Act must have a certificate of registration issued by a governmental agency regulating the profession. (§§ 13401, subd. (b); 13404.) The salient feature of a professional corporation generally (§§ 13401, subd. (c), 13401.5, 13403, 13405) and of a law corporation specifically (§ 13403; Bus. & Prof. Code, § 6165) is the required professionally licensed status of its directors, shareholders, officers, and employees.

The fact that the Center is not incorporated under the Professional Corporation Act does not end our inquiry. That legislative scheme is inapplicable if a corporation may render professional services under some other legal authority. Subdivision (a) of section 13402 states:

"This part shall not apply to any corporation now in existence or hereafter organized which may lawfully render professional services other than pursuant to this part, nor shall anything herein contained alter or affect any right or privilege, whether under any existing or future provision of the Business and Professions Code or otherwise, in terms permitting or not prohibiting performance of professional services through the use of any form of corporation permitted by the General Corporation Law."

Accordingly, may the Center engage in the practice of law in a corporate form other than pursuant to the Professional Corporation Act?

Except as provided in section 6160 of the Business and Professions Code, corporations are generally not authorized to engage in the practice of law. In *People* v. *Merchants Protective Corp.* (1922) 189 Cal. 531, 537-538, the court explained:

"This brings us to the final question, which is as to whether such a corporation thus organized, thus employing attorneys as its agents and representatives, and thus dispensing legal advice, counsel, information and services of the sort usually and generally furnished by regularly admitted and licensed attorneys and counselors to their clients in the practice of their profession, is engaged in the practice of law. The authorities, which are practically unanimous, furnish but one answer to this question and that answer is well-expressed in the case of *State ex*

*rel. Lundin* v. *Merchants Protective Assn.*, *supra*, wherein the supreme court of Washington, quoting from Ruling Case Law, says: `The practice of the law is not a business that is open to a commercial corporation. "Since, as has been seen, the practice of the law is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the court, and as these conditions cannot be performed by a corporation it follows that the practice of law is not a lawful business for a corporation to engage in. As it cannot practice law directly it cannot do so indirectly by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate."' [Citations.]"

(See also, *Paradise* v. *Nowlin* (1948) 86 Cal.App.2d 897; *Pacific Employers Ins. Co.* v. *Carpenter* (1935) 10 Cal.App.2d 592, 595; *People* v. *California Protective Corp.* (1926) 76 Cal.App. 354.)

In 55 Ops.Cal.Atty.Gen. 39 (1972), we described three narrow "exceptions" to this rule for nonprofit associations assisting in the provision of legal services. The first category was for legal aid societies operating as "private, non-profit associations which perform a public service by giving legal advice or assistance . . . to persons unable to afford private counsel . . . normally supported by voluntary contributions and . . . generally under the auspices of the local bar association . . . [and] recently . . . federally funded in part  . . . ." (*Id.* at pp. 42-43; see 36 Ops.Cal.Atty.Gen. 314 (1960).)

The second category concerned "the employment of attorneys by benevolent associations to represent their members in matters of general and common interest." (55 Ops.Cal.Atty.Gen. at p. 43.) In *Brotherhood of Railroad Trainmen* v. *Virginia State Bar* (1964) 377 U.S. 1, 7, the United States Supreme Court ruled that for union members "to associate together to help one another to preserve and enforce rights granted them under federal laws cannot be condemned as a threat to legal ethics." (See also *United Mine Workers of America etc.* v. *Illinois State Bar Association* (1967) 389 U.S. 217.)

The third category described in our 1972 opinion were organizations similar to the NAACP "which are established and operated for the purpose of preserving constitutional and legal rights" (55 Ops.Cal.Atty.Gen. at p. 46) and in which "litigation is not a technique of solving private differences . . . [but] a form of political expression" (*NAACP* v. *Button* (1963) 371 U.S. 415, 429).

Here, the Center does not, according to its fee schedule, provide free services to anyone. It is a fee-for-service organization, the primary support for which is derived directly from the fees charged. The Center is not a membership organization with members sharing unique common interests providing the focus of the services rendered. On the contrary, its services are available to a large segment of the general public.[2] Finally, the Center is not engaged in any form of political expression in terms of advocating the unique legal or constitutional interests of the poor. Instead, it is engaged in a general law practice, primarily in the family law field.

While the Center may provide high quality services in exchange for reduced fees to persons of substandard economic means, the question is whether such activity provides a basis for

---

[2]In this regard, we are not advised and the Center's fee schedule does not suggest that there is a maximum income level which would disqualify an applicant willing to pay the maximum fee for services rendered.

exemption from the requirements of licensure under the State Bar Act and the Professional Corporation Act. In 39 Ops.Cal.Atty.Gen. 155, 156-157 (1962), we gave two reasons for the hesitancy to sanction the unlicensed corporate practice of the professions:

> "The first is that professional persons are licensed by the state to practice their profession. This licensing results only after an examination by the state insures professional competence. Professional responsibility is also maintained in that the privilege of practice may be suspended or revoked as a sanction for illegal or improper conduct. Inherent in this system is personal qualification, personal responsibility and personal sanction. Certification of persons to practice in a corporate or other business form does not carry out the objective sought by regulation and is not permitted for those professional persons who must have a special license in all cases to practice their profession. [Citations.]

> ". . . . . . . . . . . . . . . . . . . .

> "The second . . . is the relationship between the practitioner and those whom he serves. [Citation.] In the normal profession, the practitioner serves a client or patient. The relationship is said to be that of trust and confidence. The interposition of a corporate entity between them is said to destroy this relationship. [Citations.]"

The exemption from licensure may not be extended to a nonprofit corporation which employs attorneys providing general legal services to clients who comprise a major segment of society, and which charges and collects the attendant fees for such services. By so concluding, we avoid the task of determining what fee structures or income levels would warrant exemption and which would not. (Cf. 62 Ops.Cal.Atty.Gen. 317, 320 (1979); 58 Ops.Cal.Atty.Gen. 755, 760 (1975).)

Accordingly, it is concluded that the Center, an agency which charges reduced fees for legal services rendered primarily to low income clients, may not incorporate for the practice of law as a nonprofit public benefit corporation.[3]

\* \* \* \* \*

---

[3]We expressly do not consider whether the Center is lawfully engaged in providing services as an unincorporated association or whether the services rendered to private clients would otherwise qualify as those of a nonprofit public benefit corporation.