THE PEOPLE v. STONEWALL J. DEFRANCE.

Criminal law—Witnesses—Impeachment—Dentist—Privileged communications—Conduct of prosecuting officers.

1. In a prosecution for uttering a forged draft, the respondent sought to establish an *alibi*, and to that end introduced a witness who testified that on the day the draft was uttered in one city the witness was at the house of the respondent in another city, and gave him a note, which the witness paid to the respondent personally on a certain day several months afterwards at the house of the witness in said city.    The note was produced, and upon it appeared an indorsement of payment as of the last-named day, signed by the respondent.    A

witness for the people was allowed to testify on rebuttal that, on the day the note was claimed to have been paid, the respondent was seen by the witness in a city in another state. And it is held that this testimony was admissible, and that the jury were properly instructed that they might consider it as bearing upon the credit to be given to the testimony of the respondent's witness as to the whereabouts of the respondent on the day the offense was committed.

2. An objection to the testimony of a witness in a criminal case on the ground that his name is not indorsed on the information cannot be made for the first time in the Supreme Court.[1]

3. A dentist is not within the terms or spirit of How. Stat. § 7516, which makes certain information acquired by physicians and surgeons privileged.[2]

4. It is the duty of prosecuting officers to place before the jury all the facts which, in their judgment, are admissible as bearing upon the question of the respondent's guilt or innocence, and the fact that they are mistaken in some of the positions taken, and that the trial court rules against them upon their offers of certain testimony, by no means implies that they are guilty of bad faith.

5. It is improper for counsel to refer, in their arguments, to witnesses whose testimony has been excluded by the court, or to suggest what they might have testified to if placed upon the stand.

Error to Kalamazoo. (Buck, J.) Argued February 28, 1895. Decided April 2, 1895.

Respondent was convicted of the crime of uttering a forged draft, and sentenced to imprisonment in the State prison at Jackson for 11 years. Judgment affirmed. The facts are stated in the opinion.

*Edwin F. Conely* and *Orla B. Taylor* (*E. M. Irish* and *A. J. Sawyer,* of counsel), for respondent.

---

[1] For cases bearing upon the question of indorsing names of witnesses on information, see *People v. Machen,* 101 Mich. 400, and note.

[2] For cases bearing upon the construction of said section, see *Dittrich v. City of Detroit,* 98 Mich. 245, and note; *Lincoln v. City of Detroit,* 101 Id. 246.

*Alfred S. Frost,* Prosecuting Attorney, and *F. E. Knappen,* Special Prosecuting Attorney, for the people.

MONTGOMERY, J.    The respondent was charged, in the circuit court for the county of Kalamazoo, with having, on the 23d day of November, 1891, uttered a forged draft, purporting to have been drawn by the Pontiac National Bank, of Pontiac, Mich., on the Merchants' National Bank of New York, for the sum of $12,500, and upon which he is claimed to have received from the First National Bank of Kalamazoo an advancement of $5,000.

The testimony on behalf of the people tended to show that the respondent came to Kalamazoo on the 10th of November, and registered at the Burdick House under the name of Louis Forrest; that he gave out that he was an agent of the Standard Oil Company, and desired to purchase some land in the vicinity of the city for that company; that he visited the bank in question on two or three occasions, and was introduced to the president by one Hammond, with whom he had become acquainted in his efforts to find land suitable for his alleged purposes; that on Monday morning, the 23d, he presented the draft in question, and received $5,000 in currency, and was credited on the books of the bank with the balance; that he immediately left the city, and was not discovered to the bank officials until October 2, 1893, when he was 'arrested in Detroit, where he had been living since the time of the alleged offense.    The defense consisted of a denial of the identity of respondent with the man Forrest, who committed the offense, and the chief question of fact was that of the identity of the respondent.    The respondent offered testimony tending to show that, during the time the man known as Forrest was in Kalamazoo, he, the respondent, was in the city of Detroit constantly.    Among other witnesses called by the respondent for the purpose

of proving this fact were Thaddeus Galvin, John Galvin, and James Galvin, who testified that on the 21st of November, 1891, they entered into a contract with respondent, which contract was produced and introduced in evidence, and purported to have been executed on that date, and to have been signed by the Galvins and by respondent. Respondent also called as a witness William Peabody, who testified that on the 23d of November, 1891, he borrowed $300 in money of respondent, and executed his promissory note for the amount; that the note was afterwards paid, on the 11th of April, 1892, to Mr. De France personally, at the house of the witness, and that De France receipted for it on the back. This note purported to have been signed by Peabody, and was indorsed on the back: "Paid, April 11, '92. S. J. De France." It appeared by the testimony of the people that at the time the man known as Forrest appeared at Kalamazoo his teeth presented a different appearance than those of the respondent subsequently presented; that the two front incisors were separated distinctly, and that now this peculiarity does not appear. The people called as a witness Charles H. Land, a dentist, who testified that between the 30th of November and the 4th of December, 1891, he inserted three false teeth in the place of the two incisors for the respondent. The prosecution called as a witness one Cornelius W. Britt, an attorney, who testified that he prepared the contract purporting to have been executed by De France and the Galvins on the 21st of November, 1891, after respondent's arrest and imprisonment, and by the respondent's direction. The prosecution also called two witnesses whose testimony tended to show that the indorsement purporting to have been made on the back of the note of William Peabody on April 11, 1892, and purporting to have been signed by De France, could not have been made at that time, as he, De France, was at that date, and for some

days prior, in St. Paul, Minn. This statement of facts is sufficient to show the relevancy of the questions raised in the brief of counsel which we deem it necessary to discuss.

Respondent's counsel contend that error was committed in getting before the jury the claim that respondent had been guilty of similar offenses to that charged, and occurring at a later date. The prosecution called as a witness F. W. Anderson, of St. Paul, Minn., who testified that he was president of the St. Paul National Bank, and first met the respondent at St. Paul on April 11, 1892. He was then asked under what circumstances he met the respondent at that time, and counsel for the respondent objected, on the ground that it related to a separate and distinct offense. The jury were excluded during the discussion, and the court ruled the testimony inadmissible. The court did not depart from this ruling during the trial, but it is claimed that counsel, by putting questions to witnesses, sought to convey the impression to the jury that the respondent had been guilty of offenses at other times and places. This subject will be referred to later on.

The prosecution, in rebuttal, called as a witness William B. Geery, who testified that on the 11th of April, 1892, the respondent was in St. Paul, and was seen by the witness in the St. Paul National Bank. This testimony was corroborated by F. W. Anderson, the president of the bank, and on the cross-examination of these witnesses facts were elicited which tended to show that respondent was guilty of some transaction which occasioned an attempt on the part of the bank officials to procure his arrest. It is strenuously insisted that this line of testimony was incompetent. Counsel invoke the rule that it is not competent to impeach a witness by contradicting him upon immaterial points, and it is said that the fact of the Peabody note having been indorsed as paid on the 11th of April was an immaterial or collateral fact, and

that it was incompetent to dispute the testimony of the witness upon this point. The court received the testimony as bearing upon the credibility of the testimony of the witness Peabody, and in this we think no error was committed. Counsel contend that the falsity of the indorsement could not affect the authenticity of the note itself, and say, "Suppose the date of the indorsement were false for some reason, would the contents of the note be false for that reason also?" The witness Peabody, as before stated, produced this note for the purpose of corroborating his own testimony, and his testimony as a whole was that he borrowed, on the 23d of November, 1891, $300 of respondent; that he gave this note; that the note was paid on the 11th of April, 1892, to Mr. DeFrance personally, at the house of the witness in Detroit, and that DeFrance receipted it on the back. This note was supposed to represent the transaction between the parties, the whole transaction, and nothing else. The witness told a connected story supported by one document, which was either true or false, and we cannot understand how it can be said that testimony showing that this instrument, which was produced for the purpose of corroborating his testimony, was false in one particular, might not be and ought not to be weighed by the jury in determining the question of whether the whole instrument was prepared for the especial occasion, and for the purpose of corroborating his testimony. Not only was the testimony competent upon this question, but to our mind it was persuasive evidence for this purpose, and it is not surprising that it should have had the effect of discrediting the witness with the jury. The court distinctly limited the application of this testimony by instructing the jury as follows:

"Whether or not the respondent was in St. Paul on April 11, 1892, has no tendency to prove that he was in Kala-

mazoo in November, from the 11th to the 23d, 1891. You may, however, consider this testimony as bearing upon the credence to be given to the testimony of the witness Peabody as to the whereabouts of the respondent November 23, 1891."

This instruction was entirely proper. If the witness Peabody had produced a forgery for the purpose of supporting his testimony, and the prosecution were able to show that the instrument which he produced for that purpose was in part a forgery, it would be most extraordinary to hold that this fact might not be taken into account in determining the weight to be given to his testimony upon all points in the case.

Numerous objections were taken to the conduct of counsel with reference to the witness Britt. First it is said that his name was not indorsed upon the information, but, as this point was not made below, it cannot be considered here. If the objection had been there made, it would have been incumbent upon the prosecution to show a sufficient reason for the failure to indorse his name upon the information, and sufficient grounds for leave to place it upon the information after the trial had commenced. But, no such objection being made, no opportunity was afforded the prosecution to make this showing, and there is no question before us for review relating to it. The other questions raised bear rather upon the fairness of the testimony of the witness Britt than upon the question of the admissibility of his testimony. Counsel seek to show by references to testimony that Britt was a willing witness, and that counsel for the people were at pains to present him to the jury as an unwilling witness, and that this conduct was prejudicial, and was intended to be. At the best the record presents a question of fact as to whether the witness was a willing or an unwilling witness, and there is no legal question involved in relation to the subject, so far as we can discover.

Counsel contend that the testimony of the witness Land was a privileged communication, under the provisions of How. Stat. § 7516, which provides that—

"No person duly authorized to practice physic or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon."

The question presented is whether this language includes a dentist. At the common law, information gained by a physician or surgeon while in attendance upon his patient was not privileged. The purpose of this statute was to throw around such disclosures as the patient is bound to make for the information of his attending physician the cloak of secrecy, and the prime object of the act was to invite confidence in respect to ailments of a secret nature, and the spirit of the act would not include a case where the infirmity was apparent to every one on inspection. In practice, however, the statute has not been so limited in construction, for the reason that the words of the act are broad enough to include any information necessary to enable the physician to prescribe or the surgeon to act. Nevertheless, the purpose of the act is to be considered in determining whether the dentist was intended to be included within its terms. Certainly the terms "dentist" and "surgeon" are not interchangeable, and if a dentist is to be held to be a surgeon, within the meaning of this act, it must be because his business as a dentist is a branch of surgery. It is apparent that the act relates to general practitioners, and to those whose business as a whole comes within the definition of "physician" or "surgeon." A dentist is one whose profession it is to clean and extract teeth, repair them when diseased, and replace them, when necessary, by artificial ones. The only case which we have found which bears directly upon this question is that of

*State v. Fisher* (Mo. Sup.), 24 S. W. 167, 22 L. R. A. 799, in which a majority of the supreme court of Missouri held that a dentist is not to be considered a surgeon. We think there was no error in admitting the testimony of this witness; that he is not within the terms or the spirit of the act.

Many of the errors assigned relate to the alleged misconduct of the counsel for the prosecution. We have given to the briefs of counsel and to the record very careful examination upon this branch of the case. It is contended that the counsel committed error in propounding questions to witnesses which they knew to be incompetent, and which implied facts which were not admissible, and the intimation of the existence of which was damaging to the respondent. It is true that counsel put numerous questions to witnesses which were excluded, but we are by no means convinced of the bad faith of counsel in this particular, and, on the contrary, consider that the counsel for the prosecution were acting in the utmost good faith. The trial extended over two weeks, as is stated. The respondent was ably defended. The counsel for the prosecution would have been derelict in their duty had they not sought to put before the jury all the facts which, *in their judgment,* were admissible as bearing upon the question of the respondent's guilt or innocence. That they were mistaken in some of the positions taken, and that the court below ruled against them upon their offers of certain testimony, by no means implies that they were guilty of any bad faith.

In the concluding argument of counsel for the prosecution, this occurred:

"Now, I asked to put Judge Mills on the stand. (Objected to.) He is not here, but I want to ask you if you believe from the testimony that you have got in this case so far——"

Counsel was here interrupted with an exception. The reference to Judge Mills should not have been made, but the circuit judge, very properly, in charging the jury, said:

"The testimony of Judge Mills was excluded by the court. Counsel for the people have no right to suggest to you what Mills would have sworn to had he been placed upon the stand. I do not remember, gentlemen, that there has been any suggestion made as to what Judge Mills would have sworn to if placed upon the stand, but I give you this instruction out of abundance of caution. If any such suggestion was made, you should disregard it altogether. Judge Mills was not placed upon the stand. You are to decide this case according to the testimony which has been given, and nothing else."

It is impossible to conceive that, after this very clear instruction, the jury could have been prejudiced by the remarks of counsel. As a matter of fact, the record does not show that he did state any fact that he could have proven by Judge Mills, or what the testimony of Judge Mills would have been if he could have been called. This was emphasized by the charge of the court, and it would be a reflection upon the intelligence of the jury to assume that after this very clear instruction they could have been influenced by this mistake of counsel in any way whatever.

Complaint is made of the instruction of the court to the effect that in passing upon the testimony of the witnesses for the respondent the jury had the right to take into consideration any interest which such witnesses might feel in the result of the suit, growing out of their relationship with respondent or otherwise, and give to the testimony of such witness or witnesses such weight as it was deemed entitled to under all the circumstances proved on the trial, and that in considering the testimony given by the respondent in his own behalf they might consider whether or not such testimony was affected in any manner by his interest in the

result of the prosecution. We do not understand that counsel contend that these instructions were not proper enough in themselves, but it is said:

" A general charge that the jury should consider the interests of all witnesses would not have been objectionable; but when nothing is said about the people's witnesses, and attention is specially directed to respondent and his witnesses, and the jury is told that their interest is an important consideration, we submit that the rights of the accused are not properly protected."

But upon turning to the record we find that the respondent's counsel asked and the court gave numerous instructions relating to the question of the weight to be attached to the testimony of various witnesses for the prosecution. Respondent's thirtieth request, as follows, was given by the court:

" In considering the question of identification, you may consider the fact that the witness Wagner swore 'to a complaint for the arrest of the respondent before he had seen him, and also that upon his visit to Detroit the respondent was brought into his presence alone, in such a manner that there could be no doubt as to the person charged with the crime."

And again:

" If the jury believe from the evidence that the witness Hammond did in fact indorse the draft in controversy in this case, you may consider this fact as bearing upon the likelihood of his identifying an innocent party instead of the guilty party."

And again:

"If you find that the witness Britt conspired to put up false testimony in this case, this would be a crime under the laws of the State. You may consider any temptations which are apparent from his testimony and the motives by which he is actuated."

And again:

" If you believe that the witness Britt willfully falsified

in any single particular, you are at liberty to diregard his testimony altogether."

And finally, on his own motion, the court charged the jury as follows:

"You are the sole and exclusive judges of the credibility of each and every witness who has testified in this case. As to some of the witnesses, you have been told that you should receive their testimony with great caution. As to others, you have been instructed that you may consider any interest which they may have in the result of this case, and these instructions you should heed. But it is equally true that you are to give to the testimony of each and every witness who has been sworn upon this trial just so much or so little credit as you find it is entitled to. You are the sole judges of the credibility of the witnesses, as well as of the weight of the evidence in the case."

It is apparent that the circuit judge fairly presented the question of the credibility of the witnesses to the jury, and that he gave all proper requests of respondent's counsel, and the jury could not have failed to understand that the question of the credibility of the witnesses was solely for them. The charge of the court, as a whole, was fair, and covered all the questions presented by the record.

The respondent had a fair trial. We think his rights were fully protected, and that the judgment should be affirmed.

McGRATH, C. J., LONG and HOOKER, JJ., concurred. GRANT, J., did not sit.