Donald W. KREUZER, D.M.D., Plaintiff,

v.

AMERICAN ACADEMY OF PERIODON-
TOLOGY and American Dental
Association, Defendants.

Civ. A. No. 77–1739.

United States District Court,
District of Columbia.

June 10, 1981.

John F. Dienelt, Brownstein, Zeidman & Schomer, Daryl A. Nickel, David J. Butler, Washington, D.C., for plaintiff.

Peter M. Sfikas, Larry R. Eaton, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., Alan M. Wiseman, Robert F. Ruyak, Howery & Simon, Washington, D.C., for American Dental Association.

James W. Hathaway, Donald A. O'Brien, James W. Hathaway & Associates, Chicago, Ill., Mark W. Foster, Moore, Foster & Montgomery, Washington D.C., for American Academy of Periodontology.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Pending before the Court are the motions of the defendants for summary judgment and the motion of one defendant to compel production of documents. Joined in this antitrust action as defendants are the American Dental Association (ADA) and the American Academy of Periodontology (AAP). The plaintiff, a dentist in the District of Columbia, graduated from the University of Pennsylvania in 1970 with the degree of Doctor of Medical Dentistry. He instituted this action against the two defendant organizations alleging that they have combined and conspired to restrain trade in violation of Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1 (1976). Plaintiff further asserts that within the AAP, individuals conspired and combined in order to restrain his practice of dentistry and cause him economic harm. Lastly, the plaintiff contends that the actions of both defendants violated common law principles and public policy. The defendants challenge all such assertions, and the AAP has sought to compel the plaintiff to produce all accounting records pertaining to his dental practice. Clarification then of the parties' polarization is appropriate.

Formed in 1914, the AAP is a not for profit corporation whose stated object is "to advance the art and science of periodontology, and by its application, maintain and improve the health of the public." Affidavit of Marilyn C. Holmquist, Executive Secretary of the AAP at ¶ 2. The Academy engages in no commercial activities and is recognized by the Internal Revenue Service as a tax exempt organization.

The ADA is wholly unrelated to the AAP and is the national organization of dentists, regardless of specialty. The AAP is not a branch or subsidiary of the ADA and the ADA has no control whatsoever over the AAP's policies or practices.

The gravamen of plaintiff's complaint concerns the denial by the AAP of his application for active membership in that organization. Active membership in the AAP is the highest degree of membership, for those who attain that status are entitled to vote in the affairs of the Academy, to hold office and be listed in its membership directory as active members. For a dentist to be elected to active membership status, he must certify to the Academy that he limits his specialized practice of dentistry exclusively to periodontology, which, generally speaking, is the practice of dentistry concerned with the gums and supporting tissue of the teeth and the diseases that afflict those areas. An associate member of the Academy need not limit his practice in this manner but has no voice in Academy affairs; this category of membership is open to any dentist who is interested in the field of periodontology. There is no question that Dr. Kreuzer is eligible for associate membership. The sole issue is the eligibility for *active* membership. Each year the AAP publishes a membership directory listing, among other

things, the membership status of each member and his address. Each year the Academy also considers the application of individuals wishing to become active members.

In 1975, plaintiff applied to the AAP to become an active member. His application was processed in a routine manner, as his name was circulated to all active members on a confidential list for their comments. Two dentists who recognized Dr. Kreuzer's name wrote the Membership Committee stating their knowledge that he did not limit his practice exclusively to periodontology. The Membership Committee rejected Dr. Kreuzer's application. Dr. Kreuzer asked that his application be reconsidered in 1976 and sought a hearing where he could state his case for membership. The hearing occurred in November of that year. Subsequently, a debate developed within the Academy concerning the parameters of a practice limited to periodontology, and as a result of plaintiff's application, a Task Force within the AAP was appointed to study the question. Before that group made its report, plaintiff instituted this action.

The complaint alleges that the plaintiff has been economically injured by the rejection of his application and that the limitation of practice requirement violates the antitrust laws because it restricts the practice of periodontology unreasonably to those dentists who treat nothing but periodontitis and related diseases. Dr. Kreuzer contends that his practice, limited to periodontal prosthetics, qualifies him as a specialist in periodontology and entitled him to active membership in the AAP. Further, the plaintiff maintains that the AAP and the ADA acted in concert to formulate anticompetitive rules and to effectuate the denial of his individual application for active membership in the AAP.

The defendant AAP contends that it has acted properly in every respect, and that the denial of Dr. Kreuzer's attempt to gain active membership was predicated on a non-discriminatory application of its limitation of practice requirement, i. e., the rule that permits only those dentists who limit their practice to periodontology to become active members. The Academy defends this rule as non-commercial, as having no anti-competitive purpose or effect, and as reasonable. Moreover, the AAP claims that the plaintiff can muster no proof to show that he has been damaged economically or professionally by the application of the limitation of practice requirement. As to plaintiff's claims of arbitrary exclusion, the AAP maintains that no material factual issues remain that would tend to show it acted in a manner inconsistently and unfairly; and its affidavits are introduced to demonstrate that Dr. Kreuzer was afforded all the protections of due process offered in the bylaws of the Academy.

The defendant ADA proffers that its relationship with the AAP is so tenuous as to make allegations of a conspiracy or combination frivolous. While conceding that its Principles of Ethics were adopted independently by the AAP and therefore form the basis for the AAP's ethical standards, and that it communicates from time to time with the AAP and other professional organizations of dental specialties concerning what ADA considers appropriate interpretations of ethical statements, which interpretations are not binding on AAP or the other organizations, but merely informative, the ADA vigorously refutes any knowledge of the application of Dr. Kreuzer. It also denies that it intended to restrain trade in any manner and that its actions had any anticompetitive effect. Relying on the voluminous discovery that has occurred in this case,[1] the ADA maintains that plaintiff has not shown, and cannot show, a single material factual question arising out of ADA's relationship with AAP that would tend to demonstrate an unlawful combination or conspiracy.

---

1. Depositions have been taken of 19 different deponents, on 21 different days, resulting in more than 2,800 pages of transcripts, and the parties have exchanged thousands of pages of materials in response to production requests. In addition, the defendants have each provided two sets of answers to interrogatories and a set of requests for admissions.

In response to the defendants' motions, plaintiff articulates a number of potential material factual questions that he claims preclude the issuance of summary judgment. These questions include whether the ADA and the AAP communicated concerning his application, whether the ADA and AAP collaborated to restrict the membership of the AAP, whether the limitation of practice requirement was motivated by anti-competitive purposes, and to what extent he has lost referral patients as a result of exclusion from active membership.

## I. SUMMARY JUDGMENT AS TO THE DEFENDANT AMERICAN DENTAL ASSOCIATION

The central question, of course, is whether material factual issues remain that would leave open the question whether the ADA participated in any conspiracy or concerted activity with the codefendant AAP in violation of the antitrust laws. Resolution of this issue turns on the standard applied to determine whether a conspiracy or illegal combination exist, and then on an examination of the pleadings, affidavits, and discovery materials to determine whether factual issues material to the determination of concerted action remain.

In summary judgment motions in antitrust cases, the Supreme Court of the United States has cautioned that summary disposition should be used sparingly because motive and intent play such important roles in the determination of liability. *See Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The Court has, however, refused to permit plaintiffs to reach the stage of fact-finding at trial merely on the allegations in the complaint that a conspiracy was present declaring, "[W]e are not prepared to extend [the right to a trial] to the point of requiring that anyone who sets forth a valid cause of action be entitled to a full-dress trial not-withstanding the absence of any significant probative evidence tending to support the complaint." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).

Although a number of formulations appear in cases defining the meaning of Section 1 of the Sherman Act, the factors listed in *Harold Friedman, Inc. v. Kroger Co.*, 581 F.2d 1068 (3d Cir. 1978) *interpreting Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968) are succinct and relevant to this dispute. For the Court to find a conspiracy, the Third Circuit stated that four factors must be present:

(1) all members of the combination knew of the defendant's purpose to restrain trade; (2) at least two members of the combination benefitted by the restraint of trade, and in that sense, shared a common purpose in restraining trade; (3) the agreement by two members of the combination actually restrained trade, as opposed to merely facilitating the restraint; and (4) at least two members of the combination intended to restrain trade.

*Id.* at 1073. The Supreme Court has consistently upheld the premise that knowledge is a critical element of participation in a conspiracy under Section 1. *See Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610 (1939) ("Each distributor was asked to participate; each knew that cooperation was essential to the successful operation of the plan . . . that the plan would result in a restraint of commerce . . . and knowing it, all participated in the plan." *Id.* at 226–7, 59 S.Ct. at 474). *See also Albrecht v. Herald Co.*, 390 U.S. 145, 149–50, 88 S.Ct. 869, 87–72, 19 L.Ed.2d 998 (1968). In *Theatre Enterprises v. Paramount Film Distributing Corporation*, 346 U.S. 537, 74 S.Ct. 257, 98 L.Ed. 273 (1954), the Supreme Court examined the requirements for proof of a conspiracy under the Sherman Act. The Court stated, "Circumstantial evidence of consciously parallel behavior may have made heavy inroads into the traditional judicial attitude toward conspiracy; but 'conscious parallelism' has not yet read conspiracy out of the Sherman Act entirely." *Id.* at 541, 74 S.Ct. at 259. In *Theatre Enterprises*, there was evidence before the Court that justifiable economic reasons supported the actions of the defendants, and there was no evidence that the

specific individuals in charge of the defendants operations had collaborated. In fact, those persons all denied collaboration.

■ The standard of proof for a conspiracy then requires something more than parallel behavior, and it is also not enough to prove that the two parties alleged to be co-conspirators merely exchanged information. *See Maple Flooring Manufacturers Association v. United States,* 268 U.S. 563, 45 S.Ct. 578, 69 L.Ed. 1093 (1925). The parties must knowingly act in concert in order to restrain trade, they must share a common goal in such action, and they must intend to restrain trade.

As to the ADA, plaintiff alleges instances where the ADA and the AAP collaborated knowingly for the purpose of restraining trade and preventing the plaintiff from being promoted to active membership in the AAP. Such allegations require examination of the communications between the ADA and the AAP to search out factual issues, if any, that remain outstanding and to analyze whether the alleged concerted action meets the basic requirements of Section 1. If the plaintiff cannot establish proof of an agreement, then the ADA cannot be deemed a co-conspirator.

Some background to ADA's alleged involvement in Dr. Kreuzer's application is warranted. Section 18 of the ADA Principles of Ethics, which the AAP has incorporated, declares that a dentist may not practice in an area beyond the limits of his announced specialization. In accordance with Section 18, the ADA has adopted definitions of the various specialties within dentistry to ensure that dentists are aware of the ADA's boundaries to their recognized area of expertise. Independently separate from the ADA's ethical principles and specialty definitions is the membership rule of the AAP requiring for admission of a dentist to active membership in the AAP, that the dentist limit his area of practice exclusively to periodontics. The AAP also has a definition of periodontics used to apply its membership rule; ADA's definition is adopted to determine when a dentist is exceeding the scope of his specialty.

Plaintiff's allegations can be divided into two groups. The first group concerns plaintiff's claim that over many years, the ADA and the AAP have combined to limit the scope of periodontics in order to restrain trade. The plaintiff's second set of allegations concern specific contacts during the pendency of the Kreuzer application that the plaintiff believes indicate a conspiracy to deny him active membership.

As to the first set of allegations involving general correspondence, communication, and consultation between the ADA and the AAP, the plaintiff has established a number of instances where the AAP and the ADA sought and exchanged information from each other. The AAP has incorporated the ADA Principles of Ethics as its own, and both defendants agree that on a number of occasions, the AAP has been in contact with the ADA to seek its interpretation of a particular ethical problem. For example, there is evidence that the AAP accepted the decision of the ADA that a dentist could not announce as a specialist in more than one area. Deposition of Marilyn Holmquist, Executive Secretary of the AAP, exhibits 15, 18. (Currently, the ADA allows a dentist to announce as a specialist in more than one category of dentistry. *See* Deposition of Bernard J. Conway, exhibits 17, 18). As another example, in 1974, the AAP sought the assistance of the ADA in formulating its guidelines to determine a dentist's eligibility for active membership. Holmquist Dep., exhibit 34. Apparently, though, this correspondence concerned AAP's desire to know whether the ADA would "restrict what might be taught by a person who was engaged in academic activity in addition to practice." Holmquist Dep. at 198–99.

Plaintiff asks the Court to consider this evidence as part of a conspiracy between ADA and AAP to restrain trade and restrict competition. Yet the plaintiff has adduced no evidence of this nature which would tend to prove that the ADA and the AAP reached any sort of agreement. The evidence presented by plaintiff through mountainous discovery, shows only the type of permissible exchanges of information

commented on in other cases. *See Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia,* 469 F.Supp. 552 (E.D.Va. 1979), *remanded in part on other grounds,* 624 F.2d 476 (4th Cir. 1980) ("Though prior inquiry, consultation, and negotiation clearly took place, no contract was entered into, no combination was formed, and no conspiracy existed. Section 1 of the Sherman Act does not prohibit a business entity which needs information and advice from obtaining information and advice from other knowledgeable business entities." *Id.* at 559.) Additionally, the ADA and the AAP utilize their definitions of specialties for wholly different purposes. The ADA is concerned about the ethics of a dentist's practice; the dentist may not practice beyond the scope of his announced specialty. The AAP is concerned about limiting the category of its active members to those who practice periodontics exclusively, so the definition is applied to determine when a member is practicing beyond the scope of periodontics. That the two organizations communicate over an appropriate definition of periodontics does not at all imply that the ADA has an interest in limiting the definition of periodontics. No evidence is presented that would suggest an anticompetitive motive on the part of the ADA.

Plaintiff raises more serious inferences and questions concerning communications from the ADA during the time that the AAP was considering his application. Plaintiff points to correspondence between officials of the ADA and the AAP at the time of his application. For example, there is communication between Dr. Bernard J. Conway of the ADA and Dr. Marvin M. Sugarman, President of the AAP. At the time that Dr. Kreuzer was seeking to upgrade his membership status, Dr. Sugarman wrote to Dr. Conway, asking to discover how the ADA would interpret Section 18 of the Principles of Ethics. The letter in response (Kreuzer Dep., exhibit 39) indicates that Conway was particularly concerned with the following two questions:

1) May a dentist who announces a limitation of his practice to periodontics provide restorative services to patients where the service is essential to the maintenance of the periodontal correction?

2) May such a periodontist refer patients needing essential restorative procedures to a dentist selected only to perform that restorative work?

Dr. Conway responded that in the opinion of the governing council of the ADA, restorative care was not included within the definition of periodontics, and whether the dentist had received training in both restorative care and periodontics would not alter its answer to the question. As to the referral question, Dr. Conway indicated that the council would need more information in order to answer.

Another example of communication between the two organizations was revealed at the Holmquist deposition, where Ms. Holmquist stated that the AAP, in discussing Dr. Kreuzer's application, had sought from the ADA an interpretation of its by-laws on the question whether one who practices restorative dentistry could be considered to practice exclusively in periodontics. The ADA responded in the same manner as did Dr. Conway, declaring that under the ADA definition, a practice that included restorative care would not be a practice limited exclusively to periodontology. Holmquist Dep. at 317–18. The AAP sought this determination from the ADA because it had independently adopted the by-laws of that organization. *Id.* Dr. Kreuzer contends that this communication is proof of a conspiracy at the time of his application to deny him active membership.

Neither the letter from Dr. Conway to Dr. Sugarman nor the later communication between Ms. Holmquist and the ADA prove the existence of an agreement between the ADA and the AAP. The letter does not mention the Kreuzer application, and there is no evidence tending to show that the ADA even knew of the Kreuzer application. The ADA was simply responding to a question by the AAP concerning the ADA's definition of periodontology. Nothing indicates that the ADA had any involvement with the limitation of practice requirement the AAP applied to Kreuzer.

The telephone conversation from Ms. Holmquist to the ADA is similarly persuasive. The ADA interpreted its definition of periodontics without any demonstrated conception that the AAP would apply it concerning its limitation of practice requirement. ADA Principle 18, bounding the scope of dental practice to the dentist's announced specialty, and the AAP limitation of practice requirement present different policy concerns to each organization. The record is barren of evidence supporting an agreement of any sort between the ADA and the AAP in order to restrict Dr. Kreuzer's membership.

Moreover, none of the communications at the time of Dr. Kreuzer's application mention his application or his name, nor do they even impute to the ADA some conspiratorial activity in answering the questions of the AAP. The exchanges of information noted by the plaintiff amount to no more than permissible communications between the ADA and the AAP.

█ The plaintiff has therefore not established the requisite proof of an agreement in order to join ADA as a codefendant in this action. At most, the plaintiff has demonstrated that the AAP relies on ADA interpretations of its Principles of Ethics because the AAP has incorporated the ADA's Principles. After unusually extensive and protracted discovery, there is documentation of examples of communication between the ADA and the AAP, over a long period of time and also at the time of the Kreuzer application. The plaintiff has shown further that the AAP deferred to the ADA's definition of periodontology as not including restorative dentistry. Nonetheless, the plaintiff has not presented proof of an agreement between the ADA and the AAP, sufficient to survive summary judgment for defendant ADA. The two organizations exist independent of one another, not in the context of a larger organization and its subsidiary. That the AAP has chosen for convenience to incorporate the ADA's ethical principles does not suggest an improper combination, that the two groups communicate over common interests

implies no illegal conspiracy. There is, simply put, no evidence that the ADA knew of any purpose to restrain trade, that it shared any purpose to restrain trade, or that it intended to restrain trade. It therefore appears that the motion of the ADA for summary judgment must be granted and this claim against it dismissed.

## II. THE AMERICAN ACADEMY OF PERIODONTOLOGY'S MOTION TO COMPEL

Earlier in this litigation, the plaintiff indicated in response to a discovery request that he would produce for defendant's copying and inspection his accounting and patient records between January 1974 and the present. After the plaintiff subpoenaed the patient treatment records of two non-party dentists, who refused to provide the materials claiming that they were privileged, he reconsidered his earlier decision and chose to withhold the documents asserting that his patients' rights would be breached. The Magistrate, in adjudicating the positions of the plaintiff and the non-party dentists, held that the subpoena would be quashed because it was "unreasonable, oppressive and irrelevant and would invade the privacy of innocent non-parties . . . and their patients." After AAP filed a formal request for production, the plaintiff objected on the grounds that his records were privileged, that they were only tangentially relevant to the issues underlying this action, that his patients' privacy would be invaded, that his own privacy would be infringed, and that production would be unduly burdensome. Now pending is the defendant AAP's motion to compel production of these materials.

█ The plaintiff instituted this action claiming that the AAP's limitation of practice requirement damaged him economically. Without some suggestion of injury, it is clear plaintiff would have no standing to maintain this action. Although the Supreme Court recognizes that "[t]he vagaries of the marketplace usually deny . . . sure knowledge of what plaintiff's situation would have been in the absence of defend-

ant's antitrust violation," *J. Truett Payne Co., Inc. v. Chrysler Motors Corp.,* —— U.S. ——, ——, 101 S.Ct. 1923, 1930, 68 L.Ed.2d 442 (1981), a long line of precedent establishes that the plaintiff must demonstrate at least the fact of injury and a basis for a reasonable estimate of damages. *See, e. g., Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 263–266, 66 S.Ct. 574, 579–80, 90 L.Ed. 1040 (1946); *Story Parchment Co. v. Paterson Parchment Co.,* 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed.544 (1931); *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927). *See also J. Truett Payne Co., Inc., supra,* —— U.S. at —— n.5, 101 S.Ct. at 1930 n.5.

Unquestionably, the plaintiff has placed in issue the nature of his dental practice. He claims that the AAP's membership policy causes him to lose patients who would have been referred to him were he an active member in the AAP and so indicated in the directory. He seeks compensation for $500,000 of lost income, which he argues is his "best estimate" of losses, but other than his own estimate, there is nothing in the record to indicate the fact of injury or economic damage. Some production is manifestly warranted.

Plaintiff also contends that the records are protected from disclosure by a "dentist-patient" privilege, embodied in D.C. Code § 14–307(a), which provides in relevant part:

> In the Federal courts in the District of Columbia . . . a physician or surgeon may not be permitted, without the consent of the person afflicted . . . to disclose any information, confidential in its nature, that he has acquired in attending a patient in a professional capacity. . . .

The parties' memoranda and the Court's research disclose a difference of opinion among the jurisdictions as to whether dentists are entitled to the same privilege as traditionally claimed by physicians and surgeons. In *Payne v. Howard,* 75 F.R.D. 465, Judge Sirica of this Court held that the treatment records of an oral surgeon were protected by this privilege. On the other hand, several state courts exclude dentists from the umbrella privilege. *See Belichick v. Belichick,* 37 Ohio App.2d 95, 307 N.E.2d 270 (1973); *People v. DeFrance* 104 Mich. 563, 62 N.W. 709 (1895). *But see* 8 *Wigmore' Evidence* § 2383 at 834–35 (McNaughton rev. 1961) (arguing that dentists should be included in the privilege).

It is unnecessary to reach the question of the privilege as applied to Dr. Kreuzer's records, because here the patients' names and other identifying characteristics can be redacted in order to protect their privacy. Defendant is concerned only with the nature and operations of plaintiff's practice as reflected in treatment and financial records. The Court concurs that this information must be divulged.

As to plaintiff's contention that production would be unduly burdensome, he can take advantage of defendant's offer to provide personnel to assist him. Additionally, the plaintiff will be given the option to produce the materials in his office for inspection and copying in a manner so as not to disrupt his professional activities or to remove the documents to defendant's location to facilitate production. However the production is undertaken, it must be completed within 20 days from the entry of this order.

Given the ruling in favor of the defendant on the motion to compel, a ruling on the motion for summary judgment filed by the AAP would be premature at this time. That determination will, therefore, be deferred until the completion of the above production. Following its analysis, the parties may, if they so elect, file supplemental materials, no later than July 20, 1981 reflecting the effect, if any, of the information on the issues presented herein.

An appropriate order and judgment will issue this date.